## STATE v. PRAIRIE OIL & GAS CO.

No. 7487—Opinion Filed Sept. 18, 1917.

(167 Pac. 756.)

(Syllabus by the Court.)

**1. Corporations—Sale of Realty—Repeal of Statute.**

Section 2 of the act of the Legislature approved May 26, 1908 (Sess. Laws 1907-08, c. 13, art. 2), providing that every corporation doing business in the state which owned real estate, other than real estate within the corporate limits of cities or towns at the time the act became effective, "shall, unless the same shall be necessary and proper for carrying on the business for which such corporations are licensed or chartered, sell and dispose of said real estate within a period of seven years," was not, as to the right to sell and dispose of such lands within the period named, repealed by the act approved May 27, 1908 (Sess. Laws 1907-08, c. 32, art. 1).

**2. Statutes — Construction — Contemporaneous Acts.**

Acts passed by the same session of the Legislature, and particularly those passed at nearly the same time, relating to the same subject or class of subjects, are presumed to be imbued by the same spirit and actuated by the same policy, and hence should be construed each in the light of the other.

**3. Statutes—Repeal—Irreconcilable Conflict.**

An act of the Legislature, containing a repealing clause, but which is confined to such statutes as are in conflict with its terms, approved on the day following the approval of another act of the same Legislature upon the same or a closely related subject, and which former act, because of the emergency clause, became immediately effective, does not work a repeal of the former act, unless there be an irreconcilable conflict between the two.

**4. Corporations—Sale of Realty—Statutes.**

The act of May 26, 1908, by section 4 thereof, is applicable "to all corporations doing business in this state, whether formed under the laws of this state, under laws previously in force in any part thereof, or under the laws of any other state, territory or government."

Error from District Court, Washington County; R. H. Hudson, Judge.

Action by the State of Oklahoma to escheat real property of the Prairie Oil & Gas Company. Judgment for defendant, and the State prosecutes error. Affirmed.

S. P. Freeling, Atty. Gen., W. H. Kornegay, Chas. West, and Horace H. Hagan, for the State.

W. S. Fitzpatrick, J. B. F. Cates, H. H. Montgomery, Jno. H. Burford, and Frank B. Burford, for defendant in error.

SHARP, C. J. On December 31, 1912, the state of Oklahoma instituted in the district court of Washington county its action against the Prairie Oil & Gas Company to have declared escheated to the state large bodies of land owned by said company and located in Washington, Nowata, Creek, and Okmulgee counties. The petition contains 42 separate causes of action, one for each tract or parcel of land involved. The lands described in paragraphs 2 to 14, both inclusive, and paragraph 33 were acquired by the Prairie Oil & Gas Company prior to statehood. To the paragraphs named, the district court, on January 6, 1915, sustained a demurrer, from which action error is prosecuted to this court. A decision of the case brings under review section 2, art. 22, of the state Constitution and the acts of the Legislature approved, respectively, May 26, 1908 (Sess Laws 1907-08, pp. 196-198), and May 27, 1908 (Sess. Laws 1907-08, pp. 387-391). Notwithstanding the very able and thorough manner in which the

case has been presented, we feel that its decision involves but one question, as will presently appear.

The position of the state in urging the court to decree a forfeiture and to escheat to the state the lands of the defendant in error is, as stated in its brief:

"We say that section 2, art. 22, of the Constitution forbids the Prairie from 'retaining' the title they held at the initiation of this suit. That section 8437, Rev. Stat. of 1910, provides that, where there is title vested in a corporation which it cannot retain, such title then under this statute escheats to the state. It is not a case of the Constitution escheating. But that instrument forbids the holding, and this statute escheats what one is forbidden to hold."

In other words, that lands belonging to a corporation, the ownership of which is forbidden by section 2, art. 22, of the Constitution, were, on approval of the act of May 27, 1908, subject to escheat to the state upon petition filed in the name of the state by its Attorney General in the district court of the county where such property or any part thereof is situated. It will be seen that the Constitution prescribes no penalty for the violation of its prohibitory provisions. It contains no self-executing provisions declaring escheats or forfeitures. In a number of states are to be found laws containing provisions prohibiting a corporation from holding real property except for the purposes of its charter or from holding it beyond a prescribed limit or quantity. And it has been held as a general rule that the violation of such a prohibition, where no specific penalty is imposed, does not accomplish an escheat of the property to the state. People ex rel. Attorney General v. Stockton Savings & Loan Soc., 133 Cal. 611, 65 Pac. 1078, 85 Am. St. Rep. 225; Commonwealth ex rel. Attorney General v. New York, Lake Erie & W. R. Co., 132 Pa. 591, 19 Atl. 291, 7 L. R. A. 634. It appears also to be a settled rule that the Legislature may validly impose the penalty of escheat for the violation of such a provision, whether found in the Constitution or the statute law. Where such is the case, the holding of real estate by a corporation in violation of the governing law, while a cause or ground of escheat, does not ipso facto effect an escheat. In this jurisdiction the power to decree an escheat of real or other property is to be found, not in the Constitution, but in the statute law of the state; and its enforcement depends upon a proper construction of the acts of the Legislature approved, respectively, May 26 and May 27, 1908. Sections 1, 2, 3, and 4 of the act of May 26, 1908, except the first part of section 1 are contained in the Revised Laws of 1910, numbered sections 1242, 1243, 1244, and 1245, respectively. The revision, other than the first part of section 1242, which is covered more fully by a preceding section, is, with slight change of language, the same as found in the Session Laws. The act of May 27, 1908, is found in the Revised Laws in sections 8436, 8437, 8438, 8439, 8440, 8441, and 8442, respectively, in substantially the same language as contained in the Session Laws.

Upon comparison of section 2 of the latter act with the engrossed bill in the office of the Secretary of State, it is found that the word "returning" contained in the eleventh line (section 8437, eighth line) should read "retaining." This error, both in the session act and in the Revised Laws, has been called to the attention of the court in the state's presentation of its case. As already noted, the precise case here presented turns upon a construction of the statutes approved one day apart. If that part of the earlier statute granting to every corporation doing business in the state an opportunity to sell and dispose of, within a period of seven years from the time the act became effective, all lands not necessary and proper to the carrying on of the business for which it was licensed and chartered, is in force, or was in force at the time the state's action was brought on December 31, 1912, then plaintiff's action must fail, as, in such event by reason of the statute it had no cause of action. However, it is claimed by the state that the act of May 26th was not directed at public service corporations, to which class it is claimed the Prairie Oil & Gas Company belongs, but corporations generally, and that if such be not the case, and the statute should be construed to include public service corporations, then the act of May 27th repealed the act of the Legislature of the previous day, and that hence a right of action accrued to the state at any time after the approval of the act when either the Attorney General or the county attorney should, upon information in his possession, institute an action to have the property of the offending corporation declared escheated. The first contention may be quickly disposed of, as section 4 of the act of May 26th expressly declares that:

"The provisions of this act shall apply to all corporations doing business in this state, whether formed under the laws of this state, under laws previously in force in any part thereof, or under the laws of any other state, territory, or government."

The Prairie Oil & Gas Company, being a Kansas corporation doing business in the state of Oklahoma, comes clearly within this

all-comprehending provision of the statute.

What, then, of the question of repeal? The situation presented is somewhat out of the ordinary. It involves a construction of two acts similar in part, and each having among its purposes the vitalization of section 2, art. 22, of the Constitution in order that the evil of excessive corporate owner-·ship of the lands might be broken up, and contumacious corporations punished by providing for an escheat of prohibited lands owned by them. It will be seen at the outset that the act of May 27, 1908, repealed all laws in conflict therewith, but no more. Unless, then, there is a clear repugnancy between the provisions of the latter act and that approved on the previous day, the provisions of the former are unaffected by the latter and must stand. It is a rule of very general application in the interpretation of statutes that all enactments of the same Legislature on the same general subject-matter are to be regarded as parts of one uniform system. Later statutes should be considered as supplemental or complementary to the earlier enactments. In the passage of each act the legislative body must be supposed to have in mind and in contemplation the existing legislation on the same subject, and to have shaped its new enactments with reference thereto. Hence the same principle which requires us to examine the context for the meaning of a particular phrase or provision, and which directs us to compare all the several parts of the same statute, only takes on a broader scope when it bids us read together, and with reference to each other, all statutes in pari materia. De Graffenreid v. Iowa Land & Trust Co., 20 Okla. 687, 95 Pac. 624; Groom v. Wright, 30 Okla. 652, 121 Pac. 215. Whatever is ambiguous or obscure in a given statute will be best explained by a consideration of analogous provisions in other acts relating to the same subject, or by a study of the general policy which pervades the whole system of legislation. Further, the rule derives support from the principle which requires that the interpretation of a statute shall be such, if possible, as to avoid any repugnancy or inconsistency between different enactments of the same Legislature. To achieve this result, it is necessary to consider all previous acts relating to the same matters, and to construe the act in hand so as to avoid, as far as it may be possible, any conflict between them. Repeals by implication, not being favored, should be avoided if possible. If two statutes can be read together without contradiction, repugnancy, or absurdity, they should both be given effect. It is not enough to justify the inference of repeal that the latter law is dif-ferent; it must be contrary to the prior law. Nixon v. Piffet, 16 La. Ann. 379; Kesler v. Smith, 66 N. C. 154; Landis v. Landis, 39 N. J. Law, 274. It is not sufficient that the subsequent statute covers some or even all the cases provided for by the former, for it may be merely affirmative, accumulative, or auxiliary; there must be positive repugnancy; and even then the old law is repealed by implication only to the extent of the repugnancy. Wood v. United States, 16 Pet. 342, 10 L. Ed. 987; Coats v. Hill, 41 Ark. 149; Connors v. Carp River Iron Co., 54 Mich. 168, 19 N. W. 938; People v. Supervisors, 67 N. Y. 109, 23 Am. Rep. 94. If, by fair and reasonable interpretation, acts which are seemingly incompatible or contradictory may be enforced and made to operate in harmony and without absurdity, both will be upheld, and the later one will not be regarded as repealing the others by construction or intendment.

As laws are presumed to be passed with deliberation and with a full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the Legislature in passing a statute did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable. In construing statutes passed at the same session of the Legislature and at nearly the same time, there is a strong presumption against implied repeals. Statutes enacted in such situation should receive a construction, if possible, which will give effect to each, as each is supposed to speak the mind of the same Legislature, and the words used in each should be qualified and restricted, if necessary, in their contruction and effect so as to give validity and effect to every other act passed at the same session. Smith v. Townsend, 1 Okla. 117, 29 Pac. 80; Trapp, Auditor, v. Wells Fargo Express Co., 22 Okla. 377, 97 Pac. 1003; Ratliff v. Fleener, 43 Okla. 652, 143 Pac. 1051. The presumption is that different acts passed at the same session of the Legislature are imbued with the same spirit and actuated by the same policy, and that one was not intended to repeal or destroy another, unless so expressed. Board of County Commissioners et al. v. Alexander, 58 Okla. 128, 159 Pac. 311.

Turning to the two acts of the Legislature, with these cardinal rules of interpretation in mind, it will be seen that in section 2 of the act of May 26th a positive period is fixed within which corporations may sell and dispose of real property owned by them not necessary for the carrying on of the business for which they were incorporated. The section

indicates broadly the nature of the proceedings intended upon a failure to comply with the statute, by whom to be brought and when. It took into consideration what was believed to be a public evil and provided for its nullification. It afforded an opportunity to all corporations doing business in the state to dispose of all real estate owned by them not necessary and proper for the carrying on of the business for which they were "chartered or licensed." Its purpose is clear and unmistakable, something that cannot be said of the latter act, which is couched in language more or less involved in meaning. This latter act relates, as its title indicates, largely to the procedure in escheat cases. Section 1 has no reference to real estate owned by corporations. Section 2 directs that in all cases where, by reason of the provisions of section 2, art. 22, of the Constitution, the title to any real property in the state shall fail to vest in the grantee under any deed, bond, contract, or will, or other instrument of conveyance, or shall fail to vest, or be transmitted under any law of inheritance or succession of this state, or where once having vested the holder of such title shall become incapable of retaining the same, all such real estate in all such cases shall be subject to escheat to the state of Oklahoma, and the proceeds arising from the sale thereof by the state shall go to the public school fund of the county in which such real estate is situate, less the amount to be fixed by the court covering cost of such proceedings. Section 3 authorizes the Attorney General or county attorney when informed, or when he shall have reason to believe, that the title to any real or personal property has vested in the state under the first section of the article (not here involved), or that title to any real estate has vested in the state under the preceding section, or that the condition of the title to any real estate is such as to bring the same within either of said sections, to file petition in the name of the state in the district court of the county where such property, or any part thereof, is situated. Section 4 relates to the summons or service and the time in which answer shall be filed. Section 5 involves the making of parties to the proceedings, the pleadings, the trial and judgment, whether for or against the state. Section 6 directs the manner of sale in case judgment is rendered in favor of the state, and the payment of the proceeds, with a provision respecting minimum price, issuance of alias writ, and authority for reappraising. So that it will be seen, and readily we think, that nothing is contained in the latter act that conflicts with the specific provisions of the former statute, fixing the time within which escheat proceedings may be instituted,

and granting to corporations doing business within the state an opportunity to sell and dispose of their real estate not necessary and proper to the carrying on of the business for which they were chartered or licensed.

The nearest approach to a conflict in respect to the time in which proceedings may be brought is in that part of section 3, directing when the Attorney General or county attorney shall be informed, or shall have reason to believe, that a situation has arisen, as provided in section 2 of the latter act, that "he shall forthwith file a petition in the name of the state of Oklahoma," etc. This contemplates proceedings under both sections 1 and 2 of the act, the former of which includes an entirely different class of cases, as the most casual reading will disclose. Construing the provisions of the two statutes together and giving effect to each, the latter should be read so as to authorize the filing of the proceedings when the Attorney General or county attorney shall be informed as provided in the latter statute, and the time shall have expired for the corporation to have disposed of its excessive holdings; that is to say, until after the expiration of the seven-year period, no cause of action has accrued to the state, and that when the Legislature in the latter act undertook to direct when the proceedings should be brought, it did so with the seven-year statute in mind and without thought of its repeal.

Aside from the reasons stated, there are a number of considerations that lead us to this conclusion. Both of the acts originated in the House of Representatives. The act of May 26th was known as House Bill No. 388, the act of May 27th as House Bill No. 613. Bill No. 388 was referred to the House committee on private corporations. Bill No. 613 to the committee on judiciary. On May 26, 1908, the Chief Executive of the state, in an official communication to the House, urged of Bill No. 386 "the earliest possible consideration to-day, so that it may reach the Senate for their final consideration." It is significant, too, that on the same day Bill No. 388 not only passed the House, but the Senate as well, and was approved by the Governor. This is not all, for in addition, the bill carried the emergency clause, so that it became effective immediately on approval. It is hardly conceivable that the Legislature intended that an emergency act deemed of such public importance, made partly at least to effectuate and vitalize the constitutional inhibition, should, in one of its main provisions, be superseded on the day following its passage and approval by another statute, under consideration by the same legislative body,

at the same time, and which latter act contained no emergency clause and is not, in respect to the time given corporations to dispose of forbidden holdings, repugnant to the specific provisions of the first act. There being no clear repugnancy (if, indeed, there is any) in the acts such as would deny the right of disposition, so clearly given by the former, it is not our province or disposition to read into the statute a conflict that does not exist, or at most is of doubtful existence. Though we were to grant that a construction of the statutes involved a matter of doubt or uncertainty, as the question is one of forfeiture of property, it would be our duty to resolve that doubt against the state. Statutes authorizing the escheat of property must be rested upon something more secure, more stable, than language of uncertain meaning.

As we have already seen, both statutes were brought forward in the Revised Statutes adopted by the Legislature on March 3, 1911. Sess. Laws 1910-11, p. 70. In the minds, therefore, not only of the revisers of the statutes but of the Legislature that adopted the revision, both acts were in full force, as it was not the purpose of the Legislature, as we understand, by the adoption of the Revised Statutes to include therein acts that had been superseded or repealed by other acts of the Legislature. Indeed, in section 3 of the act appointing the Code Commission, approved March 11, 1909 (Laws 1909, c. 9), the commissioners were expressly authorized "to omit repealed * * * provisions in existing statutes." We consider it sufficient to a decision of the case to rest it upon the wording of the statutes and the general rule governing the construction of statutes passed at the same session of the Legislature. Whether in the circumstances disclosed the state may, after the expiration of the period fixed by statute, successfully maintain an action to escheat property acquired by a corporation prior to statehood we venture no opinion; and nothing contained herein is intended to preclude such inquiry. It is sufficient to say that in the case at bar the paragraphs of the petition to which a demurrer was sustained, being paragraphs 2 to 14, both inclusive, and paragraphs 33, failed to state causes of action.

All the Justices concur.