## WILBER STATE BANK v. STATE ex rel. STANFIELD, County Atty.

No. 28224.    Oct. 25, 1938.

E. C. Stanard, Leonard Carey, and Norton Stanard, for plaintiffs in error.

W. V. Stanfield, Co. Atty., Hoyt Driskill, Asst. Co. Atty., Turner M. King, and William S. Rogers, for defendant in error.

RILEY, J. This is an appeal from a judgment in favor of defendant in error in an action to escheat to the state certain land in Pontotoc county. The land in question was acquired by the Wilber State Bank, of Wilber, Neb., on August 4, 1927, by sheriff's deed following a sale in foreclosure of a mortgage owned by the bank.

This action was commenced on June 25, 1935 by the state of Oklahoma ex rel. W. V. Stanfield, county attorney of Pontotoc county. Escheat of the land, 75.81 acres is sought for the alleged violation of section 1636, O. S. 1931, under the procedural provisions of sections 1637 to 1641, inclusive. The grounds relied upon by plaintiff are: (1) That the land in question is not suitable for townsite purposes, and that the bank could not and did not acquire and hold the title for such purpose; (2) that said real estate is held by said bank in violation of the provisions of section 2, art. 22, of the Constitution of the state of Oklahoma, and sections 1636-1641, inclusive, O. S. 1931, and particularly section 1636.

The defense is based upon three grounds: First, defendant asserted that sections 1636 to 1641, O. S. 1931, violate certain provi-

sions of the Constitution of the state of Oklahoma, particularly section 2, art. 11, section 15, art. 2, and sections 55 and 57, art. 5, and that said sections violate section 10, art. 1, of the Constitution of the United States. Second, that defendant bank, being a banking corporation organized and existing under the laws of the state of Nebraska, and subject to regulation under said laws, acquired title to said land through the foreclosure of a mortgage given to secure the payment of a promissory note, lawfully acquired by defendant bank, and which the maker was unable to pay, and that defendant bank was compelled to foreclose and take title in satisfaction of its debt at or about the time alleged in plaintiff's petition, as it was authorized to do by section 2, art. 22, of the Constitution of the state of Oklahoma; that on or about April 27, 1933, defendant executed and delivered a warranty deed conveying title to said land to Wm. Bohanek et al. as trustees, and that said trustees held full and complete title to and possession of said land under said deed from April 27, 1933, until April, 1934. so that said bank had not, at the time this action was commenced, held title to said land for a period exceeding seven years. Third, that by reason of economic conditions existing in Pontotoc county, Okla., during the time defendant held title to said land, it was unable to dispose of or sell said land.

There is but little, if any, conflict in the evidence. The trial court entered judgment for plaintiff, and defendant appeals.

In the defendant's brief it presents a number of the questions raised in its answer going to the claim that several provisions of the statute violate the provisions of the State and Federal Constitutions.

The uncontradicted evidence shows that sometime about March 3, 1933, defendant bank was closed by reason of its inability to meet its obligations; that some years prior thereto it had acquired a note of $2,000, secured by a mortgage on the land here involved; that the mortgage was foreclosed and the property sold to defendant; that under the laws of the state of Nebraska, when a state bank becomes insolvent and as many as 85 per cent. of the depositors agree, they may scale down their deposits by a percentage agreed upon, to enable the bank to reopen, and slow and doubtful assets of the bank to be designated by the State Banking Department may be turned over to such depositors or their trustees, out of which, if sufficient, they may be repaid the amount which they have scaled down their deposits.

Under this law the depositors and unsecured creditors scaled down and released 35 per cent. of their respective deposits and claims. Five trustees, Wm. Bohanek et al., were selected by the depositors so scaling down their claims and real estate carried by the bank as of the value of $12,500, and other real estate valued at $8,000, which had theretofore been charged out, was conveyed to said trustees, Wm. Bohanek et al., under a contract approved by the Banking Department. This contract provided, however, that any assets remaining after 35 per cent. of the deposits and unsecured claims had been paid in full, should be transferred back to the bank. Under this arrangement the bank, on April 27, 1933, made, executed, and delivered a general warranty deed conveying the land here involved to said trustees. They took possession, held title to the land until April, 1934, and paid the 1933-34 taxes, though their deed was not recorded; that sometime about April, 1934, the stockholders in the bank voluntarily paid to the depositors and unsecured creditors the full 35 per cent. of their deposits and claims which had been released, whereupon the unrecorded deed was surrendered back to the bank.

It was therefore made to appear that the bank had not in fact held title to the land involved for seven years at the time the action was commenced.

It cannot be said that the bank in the first instance took such title as it had in violation of section 2, of art. 22, of the Constitution. Said section specifically provides, "that corporation shall not be precluded from taking mortgages on real estate to secure loans or debts, or from acquiring title thereto upon foreclosure of such mortgages, or in the collection of debts, **conditioned that such corporation or corporations shall not hold such real estate for a longer period than seven years after acquiring such title.**"

The Constitution itself does not prescribe the penalty for the breach of the conditions under which corporations are permitted to take title to real estate upon foreclosure of mortgages or in the collection of debts. State v. Prairie Oil & Gas Company, 64 Okla. 267, 167 P. 756.

Plaintiff did not allege and does not claim that the bank took title in the first instance in violation of section 2, art. 22, of the Constitution. The allegation in the petition is that the bank acquired title by sheriff's deed on August 4, 1927; that the bank "has heretofore held and now holds" the real estate in violation of section 2, art. 22, of the Con-

stitution, and in violation of sections 1635, 1637-1641, inclusive, of O. S. 1931.

Section 1635 has no application, since it applies only to real or personal estate where the owner thereof dies without any devise thereof and leaving no heirs.

Sections 1637 to 1641, inclusive, relate only to matters of procedure. Section 1636, supra, is therefore the only section under which an action of this nature may be brought, and it merely provides that the taking, holding, or transferring land in contravention of section 2, art. 22, of the Constitution, is illegal and unlawful, and that all such real estate in all such cases shall be subject to escheat to the state of Oklahoma, etc. It also provides that every transfer made in trust for the benefit of any corporation mentioned in section 2, art. 22, of the Constitution, either secretly or otherwise, made to evade the provisions of the Constitution, is to be deemed within the provisions of the act.

There is no contention that the title was taken in the first instance in trust for the benefit of the bank. There is no claim that title was taken in the first instance otherwise than under the conditions prescribed by the Constitution, with the condition that the bank should not hold the real estate more than seven years. Therefore, the only claim that is or can be made is that the bank held the land in excess of seven years, and thereby breached the condition under which it was authorized to take the title.

It is true that the record title remained in the bank for more than seven years next before the action was commenced. But for a period of one year during said time the trustees of the creditors of the bank had and held a general warranty deed for the land under which they could have, at any time, sold the land and conveyed good title. Deducting this one year from the time between August 4, 1927, and June 25, 1935, the day this action was commenced, the bank had not held said land seven years.

The question depends entirely upon what effect is to be given this unrecorded deed.

The general rule is that the recording of a deed, in the absence of a statute requiring same as an incident to the transfer of title, is not essential to its validity or the transition of title as between the parties thereto, or in general as against all persons except creditors and bona fide purchasers for value. It is not essential as against subsequent donees of the grantor, as against the grantor's assignees under a commission of bankruptcy, or as against the grantor's heirs. 18 C. J. 246.

In this state there is no statute requiring a deed to be recorded in order to pass title.

It is contended that Bohanek et al., trustees, took and held title to the land in trust for the bank, or its stockholders. Such is not the case. The trustees took and held title in trust for certain depositors and unsecured creditors of the bank who had voluntarily scaled down and released a part of their deposits and other unsecured claims. While trustees held the title they had full power and authority to sell and convey the land so held, not for the benefit of the bank, but for the benefit of the creditors of the bank to the extent to which they had scaled down or released their deposits and claims. The mere fact that stockholders of the bank later contributed the money with which the depositors were paid did not change the nature or character of the title which the trustees held.

We deem it unnecessary to consider the other questions. The judgment is reversed and the cause is remanded, with directions to enter judgment for defendant.

OSBORN, C. J., BAYLESS, V. C. J., and GIBSON, HURST, and DAVISON, JJ., concur. WELCH, CORN, and PHELPS, JJ., absent.