Will ELKINS et al., Plaintiffs in Error,

v.

James L. HARDIN et al., Defendants in Error.

No. 37717.

Supreme Court of Oklahoma.

May 6, 1958.

Rehearing Denied July 2, 1958.

J. C. Pinkerton, Tulsa, for plaintiffs in error.

C. R. Thurlwell, Tulsa, for defendants in error.

H. J. Swarts, Tulsa, for the Estate of Carrie Mae Elkins, Deceased.

JACKSON, Justice.

This appeal presents a controversy between two sets of heirs which controversy will be determined by a proper construction of the joint industry proviso of the intestate succession statute (84 O.S.1951 § 213) which provides as follows:

"* * * Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation."

The present case involves the estate of the "survivor"; therefore, we are primarily concerned with the latter part of the above-quoted proviso. The jointly acquired property which the decedent inherited from her husband is not the identical property inherited from her deceased husband but represents part of the sale proceeds, and a reinvestment of part of such proceeds.

The heirs of the previously deceased husband contend that they are entitled to one-half of this property, notwithstanding the change in form.

The heirs of the surviving wife, whose estate is being probated herein, contend that the change in the form of the property extinguishes the rights of the heirs of the previously deceased husband. This latter contention was sustained on appeal from the County Court by the District Court,

and all of the property was distributed to the heirs of the surviving wife.

The case was tried on stipulated facts. Tillman D. Elkins died intestate without issue in 1942, survived by his wife, Carrie Mae Elkins. At the time of his death he was the owner of Lot 1, Block 3, Exchange Acres Addition to Tulsa, Oklahoma. This property was acquired during his marriage to the decedent herein, Carrie Mae Elkins as joint industry property in the estate of Tillman D. Elkins. Carrie Mae Elkins rented the property until 1954, at which time she sold it and deposited the sale proceeds in a special bank account.

Subsequently, she withdrew the greater portion of the account and purchased another tract of land in Sheridan Heights Addition. This property and the balance remaining in the bank account comprise the entire estate of the decedent, except for certain alleged claims in respect to withdrawals from the account which will be hereinafter mentioned.

The purchase price of the Sheridan Heights property, as well as the balance of the bank account, are identifiable and directly traceable to the jointly acquired property in Exchange Acres Addition.

The heirs of Carrie Mae Elkins insist that by the plain language of the joint industry proviso, the heirs of the first deceased spouse can claim as heirs of the survivor only insofar as the property remaining in the survivor's estate is the identical property inherited from the first deceased spouse. The rationale of this argument is based upon the following language of the statute "* * * if any of the *said property* remain, one-half of such property shall go * * *." (Emphasis supplied).

There appears to be some merit in this view but if the quoted language is considered, together with the two clauses immediately preceding, it is apparent that the statute is susceptible to a different construction. Those clauses, joined with the last quoted language, read as follows:

" * * * the whole *estate* shall go to the survivor, at whose death, if any of the *said property* remain, one-half of such property shall go * * *." ·(Emphasis supplied).

The words "said property" appear to refer to the word "estate" in the antecedent clause; therefore, we think it possible that the Legislature intended the words "said property" to mean, "said estate." If so, it is certain that a change in form would not prevent the property in its changed form from being a part of the *estate* inherited by the survivor. In any event, the statute in this regard is ambiguous.

In Brown v. State Election Board, 197 Okl. 169, 170 P.2d 200, it is held in the second paragraph of the syllabus as follows:

"Where a statute is ambiguous or the literal meaning of the statute would lead to absurd consequences which the Legislature probably did not contemplate, the courts must presume that such consequences were not intended, and should adopt a construction that is reasonable and will avoid an absurdity."

In our opinion the conclusion urged by the heirs of Carrie Mae Elkins is unreasonable and would lead to absurd consequences. By way of *illustration it will* suffice to cite one example of the unreasonable result that would follow if their view were adopted. If, rather than real property, the husband had left currency on hand, and the survivor thereafter deposited the money in a bank account the form of the property would be changed from cash to a right of action for debt. This would be a change in the form of the property, but it is highly improbable that the Legislature intended that such a change would cause that which was joint property to become separate property. There has been no suggestion to this court of any possible reason why the Legislature would desire or intend such a result.

We have heretofore held that the surviving spouse may dispose of the joint industry estate, and that she may devise· or bequeath it. But it does not follow that every change of form is a *disposition* of the property. In the instant case the change in form was primarily a reinvestment rather than a disposition. In its changed form it is still an inheritance of joint industry property acquired during coverture. The fact that the surviving spouse has complete dominion over jointly acquired property inherited from her deceased spouse, who died without issue, with full power to dispose of same, furnishes no basis for concluding that a reinvestment evidences an intent to dispose of the property so as to destroy the rights of the heirs of his or her deceased spouse.

The question under consideration has never before been presented to this court, and the statutes in other jurisdictions are so· dissimilar that cases construing them· afford little, if any, assistance.

The one Oklahoma case, most nearly in· point, insofar as the applicable reasoning is Reynolds v. Phipps, 89 Okl. 21, 213 P. 855, 857. In that case the court was construing the proviso which provides that where a deceased has been married more than once, the spouse at the time of death. inherits only a child's part of that property· acquired prior to coverture. The property in controversy was acquired during coverture by proceeds from the sale of property acquired prior to coverture. In that. case the court said:

"We do not believe that it was the legislative intent, in drafting the proviso to the section of the statute, which proviso limited and restricted the preceding portion of the section, to mean, that if the spouse had living children and was possessed of money, personal property, or real estate, and', thereafter if the real estate should be sold and the proceeds reinvested in other property, or if the money should· be invested in real estate, the mere changing of the form of the property would be considered property 'acquired' during coverture."

In the second paragraph of the syllabus it is held:

"A thing may be within the letter of the law, and yet not within the law, because not within its spirit, nor within the intention of its makers."

The effect of that decision was that the property retained its character as "property acquired prior to coverture", notwithstanding the fact that a change in form resulted in it actually being acquired during coverture.

 The trial court found that the decedent, Carrie Mae Elkins, had disposed of the joint industry property by reason of which the heirs of Tillman D. Elkins were not entitled to share in the estate. This was error. Since said decedent had no estate other than that discussed in this opinion, the heirs of Tillman D. Elkins are entitled to one-half of the entire estate.

The heirs of Tillman D. Elkins contend that they are entitled to one-half of a $4,000 indebtedness allegedly owed by Mrs. Bertie Adams to the estate. It follows that if the claim against Bertie Adams is valid, and recovery in a proper proceeding should be had thereon, the heirs of Tillman D. Elkins would be entitled to one-half thereof.

The heirs of Tillman D. Elkins also request that we direct the administrator of the estate to bring an action against Mrs. Bertie Adams under 58 O.S.1951 § 292, for double the amount of $2,937.10 which she allegedly alienated in withdrawing such amount from decedent's bank account the day following decedent's death. The stipulation shows that $1,880.49 of this sum was used by Mrs. Bertie Adams in paying the funeral expenses of Carrie Mae Elkins and that the balance thereof, $1,056.61, was delivered to the administrator and accounted for in the estate. No request for such an action was presented to either the County or District Court, so far as the record discloses. The question of whether we should consider this request, without such request having first been presented to the trial court and ruled upon, has not been briefed. We therefore decline to pass upon this issue.

The judgment of the District Court is reversed, with directions to enter judgment in said cause decreeing to the heirs of Tillman D. Elkins, one-half of said estate, and decreeing one-half of said estate to the heirs of Carrie Mae Elkins.