2008 OK 52

Gene STIPE, Petitioner/Appellee,

v.

STATE of Oklahoma, ex rel. BOARD OF TRUSTEES OF the OKLAHOMA PUBLIC EMPLOYEES RETIREMENT SYSTEM and the Oklahoma Public Employees Retirement System, Respondents/Appellants.

No. 102511.

Supreme Court of Oklahoma.

May 27, 2008.

Rehearing Denied July 9, 2008.

Murray E. Abowitz, Abowitz, Timberlake & Dahnke, P.C., Oklahoma City, OK, for Appellee.

Joseph A. Fox, General Counsel, Oklahoma Public Employees Retirement System, Oklahoma City, OK, for Appellant.

HARGRAVE, J.

¶ 1 Gene Stipe (Stipe) served as an elected member of the Oklahoma House of Representatives from November 18, 1948 to November 18, 1954. He served as an elected member of the Oklahoma State Senate from November 21, 1956 until he resigned that office effective March 11, 2003. On March 29, 2003 Gene Stipe filed his retirement notice and application with the Oklahoma Public Employees Retirement System (OPERS), selecting a retirement date of June 1, 2003. Gene Stipe had 54 years of service credit in OPERS and was eligible for a monthly benefit of $7,042.23 based on his final average compensation of $39,123.48.

¶ 2 On March 24, 2003, Gene Stipe signed a plea agreement in the United States District Court for the District of Columbia pleading guilty to three counts: one count of conspiracy to violate the Federal Election Campaign Act, 18 U.S.C. § 371, a misdemeanor; one count of Conspiracy to Obstruct a Federal Election Commission investigation, 18 U.S.C. § 371, a felony; and one county of perjury, 18 U.S.C. § 1621, a felony.

¶ 3 By letter dated June 17, 2003, a trial attorney for the U.S. Department of Justice mailed to OPERS, at OPERS' request, a copy of the plea agreement. By letter dated June 23, 2003, general counsel for OPERS notified Stipe that her office had determined that the crimes for which he pled guilty violated his oath of office as a state officer and that according to 51 O.S. § 24.1, all retirement benefits that were not vested on September 8, 1981, the effective date of the statute, were forfeited.[1] Stipe was advised

---

1. As of September 8, 1981, the effective date of    51 O.S. § 24.1, Stipe had accrued 31 years of

that his exclusive administrative remedy was the right to an administrative hearing before the Board of Trustees of OPERS pursuant to the Oklahoma Administrative Procedures Act (OAPA), 75 O.S. §§ 250–323.

¶ 4 Stipe pursued his administrative remedy and a hearing was held before a hearing examiner for the Board of Trustees of OPERS on March 26, 2004. The attorneys representing Stipe and OPERS argued the case to the hearing examiner and introduced documentary evidence. No witnesses were called despite the parties being advised by the hearing examiner of the importance of making a record from which the final order would be entered. Counsel for OPERS stated that she was calling no witnesses: "I don't believe it's necessary. I don't believe that ... they've met their burden of proof, so I don't think its necessary for us to introduce witnesses."

¶ 5 Both parties submitted proposed findings of fact and conclusions of law to the hearing examiner, who adopted the order proposed by OPERS. The final order entered by the Board of Trustees of OPERS on May 25, 2004 found that, upon consideration of the hearing examiner's proposed order containing findings of fact and conclusions of law, Stipe's request for reinstatement of retirement benefits was denied. Eight of the Board's thirteen members were present and voted on the matter.

■ ¶ 6 Stipe appealed to the district court of Oklahoma County by filing a petition for judicial review of administrative final order pursuant to the Oklahoma Administrative Procedures Act, 75 O.S.2001 § 318(B)(2). Such review is limited to the record presented at the agency hearing. The district court shall, upon request, hear oral argument and receive written briefs. 75 O.S.2001 § 321. The district court entered an order filed August 8, 2005, which found that OPERS had misapplied the forfeiture statute in excess of its statutory authority because the federal offenses had nothing to do with Stipe's service in office and did not violate his oath of office. The district court further found that

the final agency order was arbitrary and capricious because it did not give effect to its own prior administrative interpretation of the forfeiture statute in the case of *In re: Matter of Forfeiture of Retirement Benefits of Paul Taliaferro,* where Taliaferro was a state senator at the time of his conviction for five federal felonies. The district court reversed the final agency order and remanded with instructions to OPERS to immediately award Stipe his full retirement and Savings Incentive Plan Benefits and to immediately pay the benefits that should have been paid since his retirement date of June 1, 2003. OPERS appealed to this Court and we granted the motion to retain. Oral argument to the Court en banc was held February 26, 2008.

## STANDARD OF REVIEW

¶ 7 The Oklahoma Administrative Procedures Act (OAPC), 75 O.S.2001 § 318 et seq., governs our review. In reviewing agency orders, the standard is the same for the district court and this Court. Section 322(1) provides that in any proceeding for review of an agency order the Supreme Court or the district court may set aside or modify the order, or reverse it and remand it to the agency for further proceedings if it determines that the substantial rights of the petitioner have been prejudiced because the agency's findings, inferences, conclusions or decisions violate the constitution, exceed statutory authority or jurisdiction of the agency, violate lawful procedure, err in applying the law, or are arbitrary or capricious. Our review is limited to the record made in the administrative hearing.

¶ 8 The facts are not in dispute, thus we are left with a question of law which we, like the district court, review de novo. *State ex rel. Porter v. Ferrell,* 1998 OK 41, 959 P.2d 576, 577. The question is whether the crimes to which Stipe pled guilty constitute a violation of his oath of office. If so, then Stipe will forfeit retirement benefits accruing after September 1, 1981, the effective date of the

service and was eligible for a monthly benefit of $1,572.06 based on a final average compensation

of $15,213.44.

forfeiture statute, 51 O.S. § 24.1. We begin first with the forfeiture statute, 51 O.S.2001 § 24.1(A), which provides in pertinent part:

"In the event any elected or appointed state or county officer or employee who, during the term for which he or she was elected or appointed, pleads guilty or *nolo contendere* to a felony or any offense involving a violation of his or her official oath in a state or federal court of competent jurisdiction, he or she shall, immediately upon the entry of said plea, forfeit said office or employment. Any such officer or employee upon final conviction of, or pleading guilty or *nolo contendere* to a felony in a state or federal court of competent jurisdiction shall vacate such office or employment and *if such felony or other offense violates his oath of office shall forfeit all benefits of said office or employment, including, but not limited to, retirement benefits provided by law . . .*" (emphasis added).

■ ¶ 9 Section 24.1 is a forfeiture statute and as such must be strictly construed. *Hendrick v. Walters,* 1993 OK 162, 865 P.2d 1232. This Court must be mindful of Oklahoma's strong statutory policy, as well as that of the surviving common law, which disfavors both private- and public-law forfeitures. *Hendrick v. Walters,* 1993 OK 162, 865 P.2d 1232, 1238–39. Forfeiture will not be decreed except when required by clear language contained in the statute. *Pirkey v. State,* 327 P.2d 463, 466–67 (Okla.1958). Courts abhor forfeitures and will not force upon a forfeiture statute a construction which amounts to a reading into the law provisions not inserted therein by the legislature. *Id.* Courts will neither search for a construction that will bring about a forfeiture, nor adopt a meaning which would produce that effect, unless the language of the statute or constitutional provision under consideration—giving due respect to its purpose and to extant circumstances—clearly demonstrates the legislature intended that a forfeiture take place. *Hendrick v. Walters,* 865 P.2d at 1238–39. Thus, where there is any doubt whether a forfeiture statute applies, the doubt must be resolved against forfeiture. *See, State v. Prairie Oil & Gas,* 64 Okla. 267, 167 P. 756, 759 (Okla.1917).

■ ¶ 10 Section 24.1 makes a clear distinction between forfeiture *of the office* and forfeiture *of benefits.* Conviction of or plea of guilty to a felony forfeits the office, but forfeiture of benefits occurs only if the felony or other offense also violates the oath of office. Thus, pleading guilty to a felony is not enough-the offenses must violate Stipe's oath of office. Keeping in mind that forfeitures are looked on with disfavor, we must strictly construe § 24.1 to limit forfeiture of benefits of the office to offenses that by their very nature constitute a violation of the oath of office.

¶ 11 The oath of office for public officers is found at Art. XV, § 1, Oklahoma Constitution:

" § 1. Officers required to take oath or affirmation—Form.

All public officers, before entering upon the duties of their offices, shall take and subscribe to the following oath or affirmation:

I, . . . . . . . . . ., do solemnly swear (or affirm) that I will support, obey and defend the Constitution of the United States and the Constitution of the State of Oklahoma, and that I will not, knowingly, receive, directly or indirectly, any money or other valuable thing, for the performance or nonperformance of any act or duty pertaining to my office, other than the compensation allowed by law; I further swear (or affirm) that I will faithfully discharge my duties as . . . . . . . . . . to the best of my ability."

¶ 12 By this oath, the officeholder swears to support, obey and defend the constitutions of the United States and the State of Oklahoma. The officeholder swears that he or she will not knowingly receive, directly or indirectly, any money or other valuable thing for the performance or nonperformance of any act or duty pertaining to the office. The officeholder swears to faithfully discharge his duties to the best of his ability. The "duty" or "duties" in the oath refer to the duties pertaining to the office. It is immediately apparent that the crimes to which Stipe pled guilty in the district court for the District of

Columbia do not facially constitute a violation of Stipe's oath of office. The plea agreement even contains a provision that the parties agree that the defendant's conduct, as set forth in the Factual Basis for Plea and Information, did not relate to or arise from his duties as a public official or state senator from Oklahoma. The crimes to which Stipe pled guilty were: one count of conspiracy to violate the Federal Election Campaign Act, a misdemeanor; one count of Conspiracy to Obstruct a Federal Election Commission investigation, a felony; and one count of perjury, 18 U.S.C. § 1621, a felony.

¶ 13 How, then, did OPERS determine administratively that Stipe's benefits should be forfeited? First, OPERS determined that the loyalty oath, 51 O.S. 36.2(A) was one of Stipe's oaths of office within the meaning of § 24.1, and that such oath was cumulative with the constitutional oath. Second, OPERS made assumptions and inferences about Stipe's crimes based on his status as a state senator. Third, OPERS failed to follow its own administrative policy established twelve years earlier in the pension forfeiture matter of another state senator, Paul Taliaferro. Finally, OPERS failed to resolve any doubt in favor of Stipe, i.e., against forfeiture.

¶ 14 The agency's Final Order adopted the findings of fact and conclusions of law, as amended, proposed by OPERS. The final agency order, concluded as a matter of law that:

1) the loyalty oath and the constitutional oath are cumulatively considered Stipe's oath of office for purposes of 51 O.S. § 24.1; [2]

2) the criminal conduct of Stipe which resulted in his guilty pleas constitutes a violation of his oaths, causing him to forfeit a major portion of his retirement benefit under 51 O.S. § 24.1;

3) OPERS action does not constitute disparate treatment nor does it violate Stipe's equal protection rights under the Constitution of the United States of America and the Constitution of the State of Oklahoma;

. . .

¶ 15 The Board erred as a matter of law in finding that Stipe had two applicable oaths of office; i.e., that the loyalty oath was cumulative with the constitutional oath and would be considered in determining whether Stipe had violated his "oaths" of office. In *Hendrick v. Walters*, 865 P.2d 1232 (Okla. 1993), we held that the constitutional oath was Oklahoma's sole official oath for public officers. We determined that the manifest intent of the 1969 constitutional amendment (providing for the form of oath of office to be taken and subscribed to by all public officers of Oklahoma) was to provide one mandatory constitutional oath for all public officers in a newly prescribed form. The granting of authority in that amendment for the legislature to add *new* oaths was a strong indication that the legislature intended to provide one form oath and eliminate all nonconforming oaths. 865 P.2d at 1240–41. The petitioner had the burden to show the legislative intent to make a supplemental oath mandatory. 865 P.2d at 1242. The legislature did not affirmatively act to make the loyalty oath found at 51 O.S. § 36.2(A) cumulative to the constitutional oath until November 1, 2004, after the events in the present case transpired.[3]

¶ 16 The Board also erred in concluding as a matter of law that Stipe's offenses violated his oath of office. The Board's "Findings in Support of Conclusions of Law" reveal that the Board's conclusion was based on conjecture and inferences based on Stipe's status as a state senator rather than upon evidentiary matter. The Board's findings were:

a) As a senior state legislator Stipe used the power and influence gained from his position to mastermind a conspiracy involving almost $250,000 in illegal campaign contributions to thirty-nine straw donors,

---

**2.** Conclusion of Law No. 1 was: "As a state elected official, Stipe was required to execute and file at least two oaths, which are cumulatively considered his oath of office for purposes of 51 O.S. § 24.1."

**3.** Laws 2004, c. 408, § 1, eff. Nov. 1, 2004.

each of whom violated the law on Stipe's behalf;

b) Stipe engaged in an elaborate scheme to cover his illegal activities, lying repeatedly about his involvement, all while serving as a lawmaker and officer of the State of Oklahoma—under *Ethics Comm. v. Keating*, Stipe was a state officer 24 hours a day, 7 days a week;

c) Stipe's actions clearly violated his loyalty oath;

d) Stipe's actions were a violation of his constitutional oath in that he swore to faithfully discharge his duties as a senator; conduct in violating election laws, whether state or federal, demonstrates indifference to the voters of Oklahoma who repeatedly returned him to office ...

¶ 17 No witnesses were called to testify in the administrative hearing. The documentary evidence consists of photocopies of the constitutional and loyalty oaths of office signed by Stipe in November 2000; photocopies of the Plea Agreement and Facts Underlying Plea Agreement entered in the United States District Court for the District of Columbia dated March 23 and 25, 2003 in *United States of America v. Gene Stipe*; photocopy of the final agency order in OPERS case No. 92–9, *In re: The Matter of Forfeiture of Retirement Benefits of Paul Taliaferro*; a computation of benefits sheet drafted by OPERS entitled "Forfeiture of Benefit Details;" "Government's Memorandum In Aid of Sentencing" filed October 3, 2003 in the district court for the District of Columbia.[4] The documentary evidence does not establish a violation of Stipe's oath of office by the offenses pled to. OPERS failed to make a prima facie showing that Stipe's benefits should be forfeited because the crimes to which Stipe pled guilty do not facially show violation of the oath of office so as to work a forfeiture. *See, Wolfe v. State*, 1933 OK 270, 21 P.2d 1067 (corporation own-

ing real estate in violation of Art. 2, § 22 Oklahoma Constitution did not, ipso facto, work an escheat to the state).

¶ 18 The Board likewise disregarded decisions of this Court which hold that the conduct must be causally related to the duties of the office for forfeiture to apply. *See, for example, State ex rel. Porter v. Ferrell*, 959 P.2d 576 in which the Court assumed without discussion that Porter's convictions for 36 felony counts of filing false travel claims and his pleas of nolo contendere to 11 felony counts of embezzlement of state funds and destruction of public records made him subject to forfeiture of benefits under 51 O.S. § 24.1. *See also, Callender v. Dist. Ct. For 20th Judicial Dist.*, 1981 OK 16, 625 P.2d 627. In that case it was held that a county commissioner violated his oath of office and the office was forfeited when he entered a plea of nolo contendere to a misdemeanor involving official misconduct as defined by 21 O.S.1971 § 343. Callender caused a bucket loader to be transported and used by a corporation in which he had a personal interest. Again, the offense by its very nature related to the office of county commissioner: wrongful use of county property for personal use and benefit. *State ex rel. Blankenship v. Freeman*, 440 P.2d 744, 754 (Okla.1968) stands for the proposition that before an officer can be removed from office or the office forfeited by Article 15, § 2 Oklahoma Constitution, the officer must have been convicted in a court of competent jurisdiction of having violated his oath of office. Where no such conviction had been made, this court deemed itself without jurisdiction and power to make a judicial determination that the corporation commissioners had forfeited or vacated their respective offices by allegations that they owned interests in companies that they regulated.[5]

¶ 19 Finally, we agree with the district court that OPERS acted arbitrarily and ca-

---

4. The memorandum was executed October 1, 2003 and filed in the District Court for the District of Columbia on October 3, 2003, so could not have been used by OPERS in its original administrative decision on June 23, 2003 to forfeit Stipe's benefits, and no evidence was introduced in support of any of the arguments therein.

5. 51 O.S. § 24.1(A) requires government prosecutors to notify the retirement system in which such officer or employee is enrolled *of the forfeiture of such officer's* or employee's *retirement benefits*. In the case at bar, the only evidence is that the federal prosecutor sent the plea agreement to OPERS *at* OPERS' request. Record p. 64.

priciously by failing to follow its own administrative policy that a violation of federal law unrelated to the duties of the office of state senator is not a violation of the senator's oath of office and would not support forfeiture of retirement benefits. *In re: Matter of Forfeiture of Retirement Benefits of Paul Taliaferro,* OPERS hearing No. 92–9.

¶ 20 In the *Taliaferro* matter, Senator Taliaferro had been convicted of five (5) federal felonies: four (4) counts of making a false statement to influence the action of a federally insured financial institution in violation of 18 U.S.C. § 1014, and one count of making a false statement to influence the action of the F.D.I.C. in violation of 18 U.S.C. § 1007. Taliaferro was an elected state officer, a state senator, and was removed from office as a result of the conviction. The OPERS Board in that case determined that the felony convictions arose from Taliaferro's personal loan transaction with respect to his farming activities and did not violate his oath of office per 51 O.S. § 24.1. Thus, the Board concluded as a matter of law that Paul Taliaferro was eligible to retain his retirement service credit with OPERS and had not forfeited his retirement benefits under 51 O.S. § 24.1.

¶ 21 The Board held that Stipe failed to meet his burden of proof to show that OPERS action violates state and federal constitutional guarantees of fair and equal treatment. The Board found that "the crimes, the facts and the evidence in these two cases are substantially different." The Board found that there was no evidence to conclude that Taliaferro had used his senate position to gain influence or favor on the federal loans. They found that "the fact that [Taliaferro] was a senator does not appear to be germane to his criminal convictions." The Board then concluded, however, that Stipe's "high-ranking public office gave him the power and opportunity to commit these crimes" and that his office and his crimes were "irrevocably intertwined." Stipe's "high-ranking public office" was the same as Taliaferro's and there is no evidence that Stipe used his senate position to gain influence or favor, or at all. There was no showing made that Stipe's office and his crimes were any more "irrevocably intertwined" than Taliaferro's. In *Taliaferro,* The Board determined that the fact that Taliaferro was a state senator did not appear germane to his federal crimes; in the present matter the Board assumed the opposite.

■■■ ¶ 22 Without reaching the constitutional equal protection argument, we determine, as did the district court, that OPERS violated its own long-standing administrative interpretation of § 24.1. An administrative interpretation of long standing may not be reversed by the agency absent a cogent reason—i.e., a compelling, forceful or conclusively convincing ground. *Cox v. Dawson,* 1996 OK 11, 911 P.2d 272, 277. *See also, Oral Roberts University v. Okla. Tax Com'n,* 1985 OK 97, 714 P.2d 1013. It has been twelve years since the agency's interpretation of § 24.1 in the case of Senator Taliaferro and the legislature has not acted to express its disapproval with that interpretation. Where the legislature has not expressed its disapproval with the agency's construction, the legislature's silence may be regarded as acquiescence in the agency's construction of the statute. *United Airlines, Inc. v. State Board of Equalization,* 1990 OK 29, 789 P.2d 1305, 1311–12. The record does not show compelling, forceful or conclusively convincing grounds presented to distinguish the treatment of Stipe's case from that of Senator Taliaferro.

¶ 23 For the above and foregoing reasons, we conclude, as did the district court, that the final agency order of the Board of Trustees of OPERS denying Stipe's application to have his retirement benefits reinstated was erroneous as a matter of law.

**ORDER OF THE DISTRICT COURT IS AFFIRMED.**

¶ 24 CONCUR: HARGRAVE, OPALA, WATT, COLBERT, REIF, JJ., LAVENDER, SUMMERS, S.JJ.

¶ 25 DISSENT: WINCHESTER, C.J.

¶ 26 DISQUALIFIED: EDMONDSON, V.C.J.

¶ 27 RECUSED: KAUGER, TAYLOR, JJ.

WINCHESTER, C.J., dissenting.

¶ 1 I must respectfully dissent to the majority's conclusion regarding Senator Stipe's federal crimes. The particular nature of these calculated crimes coupled with his prestige as a State Senator served to disenfranchise his constituents. These acts violated his oath of office and constituted a breach of service as State Senator.

¶ 2 Stipe pled guilty to three counts: one count of Conspiracy to Obstruct a Federal Election Commission investigation, a felony; one count of perjury, also a felony; and one count of conspiracy to violate the Federal Election Campaign Act, a misdemeanor. According to Stipe's own admission, these crimes involved an elaborate conspiracy to funnel $245,189 in illegal campaign contributions to a candidate in the 1998 election campaign for Oklahoma's Third Congressional District. To accomplish this subversion, Stipe used at least 39 straw donors, each of whom violated the law on Stipe's behalf. The Senator then attempted to cover his illegal activities by repeatedly lying to investigators about his involvement and eventually committing perjury. All these events occurred during Stipe's tenure as a State Senator.

¶ 3 The majority opinion relies on the assumption that Stipe's actions did not violate his oath of office. As a Senator, Stipe swore to "support, obey, and defend the Constitution of the United States, and the Constitution of the State of Oklahoma." He swore and signed this oath twice as a state representative and seven times as a state senator.

¶ 4 Free and fair elections are the foundation of our democracy. The Declaration of Independence established that the power of government comes from the consent of the governed. These foundations are expanded upon in the United States Constitution. Article I, Section 2 relates directly to congressional elections: "The House of Representatives shall be composed of members chosen every second year by the people of the several states...." Section 4 elaborates on the election process: "The times, places and manner of holding elections for Senators and Representatives, shall be prescribed in each state by the legislature thereof...."

¶ 5 Although abiding by federal campaign laws might not have been explicitly stated in the Senator's oath of office, I would assert that tampering with an election strikes at the very heart of "support, obey and defend the Constitution."

¶ 6 Our democracy operates on the premise of one person, one vote. The amount of money Senator Stipe injected into the campaign served to drown out the voice of individual voters in favor of his own selection for office. Campaign finance laws set contribution standards to level the playing field among the candidates and to ensure that any single donor does not have undue influence over an elected official.

¶ 7 This is not a case of poor record keeping or an overzealous supporter exceeding the contribution limit by a few dollars. This was a calculated and elaborate effort by a State Senator with 54 years in office to deprive many of his own constituents of their fundamental voting rights.

¶ 8 This calculated effort involved a number of other people, namely the 39 straw donors and the congressional candidate and was, by his own admission, orchestrated by Stipe. As the U.S. Attorney stated, "Stipe used his enormous influence and reputation" and "his position of authority and power to manipulate the conduct of people who looked to him for leadership." The prestigious position of State Senator for 54 years imbued Stipe with a powerful and forceful influence that compelled 39 other individuals to commit conspiracy. This power and influence stemmed directly from holding the office of State Senator and cannot be overlooked.

¶ 9 Clearly, if Senator Stipe had accepted the illegal contributions, rather than financed them, there would be no question that he violated his oath of office. I assert that the election process is so fundamental to our system of government that any illegal actions to subvert it are in themselves violations of the oath of office.