212 P.3d 491 (2009)
2009 OK CIV APP 38
STATE of Oklahoma, ex rel., DEPARTMENT OF HUMAN SERVICES, CHILD SUPPORT ENFORCEMENT DIVISION, Plaintiff/Appellant,
v.
Jayson T. PALMER, Defendant/Appellee.
No. 105,059. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.
Court of Civil Appeals of Oklahoma, Division No. 3.
March 13, 2009.
*492 Amy E. Wilson, Elizabeth S. Wilson, Tulsa, OK, for Plaintiff/Appellant.
Mark E. Wilson, Oklahoma City, OK, for Defendant/Appellee.
LARRY JOPLIN, Judge.
¶ 1 Plaintiff/Appellant, State of Oklahoma, ex rel. Department of Human Services (DHS), Child Support Enforcement Division (CSED), seeks review of the district court's order which reversed an administrative ruling and directed the return of seized funds to Defendant/Appellee, Jayson Palmer (Palmer), in a child support enforcement action. DHS asserts the district court erred as a matter of fact and law.
¶ 2 Palmer received the money by virtue of the Energy Employees Occupational Illness Compensation Program, after the death of his father, who had been exposed to radiation poisoning as a result of his employment. 42 U.S.C. § 7384 et seq. DHS seized the funds, totaling approximately $12,960.00, under the terms of the Debt Collection Improvement Act of 1996, 31 C.F.R. § 285.1, for the payment of delinquent child support owed on behalf of one of Palmer's three children. Palmer appeared before the Office of Administrative Hearings on the child support enforcement matter after he requested return of seized funds.
¶ 3 At the hearing before the administrative law judge, Palmer asked the funds be distributed equally between his three children, due to the nature and source of the funds as an inheritance of sorts from his father. The administrative judge denied his request and applied the seized funds to the amount of child support Palmer owed for the one child at issue. Palmer appealed the agency decision to the district court, which reversed the agency decision and ordered the return of the seized funds to Palmer.
¶ 4 Under the Oklahoma Administrative Procedures Act (OAPA), the district court's review of the agency decision is limited to the record made before the agency below. 75 O.S.2001 § 321; Stipe v. State, ex rel. Bd. Tr. of Oklahoma Public Employees Retirement Sys., 2008 OK 52, ¶ 7, 188 P.3d 120, 122; City of Tulsa v. Public Employees Relations Board, 1998 OK 92, ¶ 12, 967 P.2d 1214, 1219. "An appellate court may not substitute its judgment for that of the agency on the latter's factual determinations," and "[a]n agency's order will be affirmed if the record contains substantial evidence in support of the facts upon which the decision is based, and if the order is otherwise free of *493 error." Oklahoma Department of Public Safety v. McCrady, 2007 OK 39, ¶ 10, 176 P.3d 1194, 1200-1201. (Footnotes omitted). That is to say, the reviewing courts, whether district or appellate, must affirm the agency decision if it is found to be valid and free from prejudicial error. 75 O.S.2001 § 322(3).
¶ 5 However, the appellate court, "may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:
(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law[.]"
75 O.S.2001 § 322(1)(a)-(d). On appeal, the district court below determined the issue before it was a matter of law and reversed the agency decision after a de novo review. For the following reasons, the order of the district court is reversed and this cause remanded.

Offset of Energy Employees Occupational Illness Compensation Program is not listed under the exceptions outlined in Title 31 C.F.R. § 285.1
¶ 6 The offset provisions of the Debt Collection Improvement Act of 1996 are contained in 31 C.F.R. § 285.1. The federal payments which are not subject to offset under this section are contained in subsection (i):
(i) Payments subject to offset. Federal payments subject to offset under this section include all Federal payments except:
(1) Payments due to an individual under
(i) Title IV of the Higher Education Act of 1965;
(ii) The Social Security Act;
(iii) Part B of the Black Lung Benefits Act;
(iv) Any law administered by the Railroad Retirement Board;
(2) Payments which the Secretary determines are exempt from offset in accordance with paragraph (k) of this section;[1]
(3) Payments from which collection of past-due support by administrative offset is expressly prohibited by law;
(4) Payments made under the Internal Revenue Code of 1986 (except that tax refund payments are subject to offset under separate authority); and
(5) Payments made under the tariff laws of the United States.
31 C.F.R. § 285.1(i).
¶ 7 Palmer seeks application of the offset exception for the funds he received pursuant to the Energy Employees Occupational Illness Compensation Program. In arguing for an exception, Palmer claims the funds he received by virtue of the Energy Employees program are essentially the same as those provided under the Part B Black Lung Benefits exception contained in § 285.1(i)(1)(iii). Palmer asserts the Energy Employees program contains a declaration of purpose which is virtually identical to the declaration articulated for the Black Lung Benefits Act. See 42 U.S.C. § 7384 (Energy Employees Occupational Illness Compensation Program, Part A. Establishment of Compensation Program and Compensation Fund); 30 U.S.C. § 901 (Black Lung Benefits Act, general provisions).
¶ 8 Despite the similar language and the similar circumstances under which the two acts were created, we cannot find any authority for expanding the exceptions of § 285.1(i) *494 in the manner Palmer proposes. We can only assume Congress articulated the exceptions it intended to provide and cannot expand on the specific exceptions contained in the statute, absent some compelling authority permitting such an expansion. George E. Failing Co. v. Watkins, 2000 OK 76, ¶ 7, 14 P.3d 52, 56 (in statutory interpretation court presumes law making body expressed its intent and intended what it expressed).
¶ 9 As a result, the Debt Collection Improvement Act of 1996 does not provide an offset exception for funds received pursuant to the Energy Employees Occupational Illness Compensation Program.

Prohibition against the assignment of claims does not prevent child support enforcement from accessing funds ultimately realized
¶ 10 The Energy Employees Occupational Illness Compensation Program contains a prohibition against the assignment or transfer of claims. 42 U.S.C. § 7385f. It is Palmer's position that this prohibition precludes the Child Support Enforcement Division from seizing the funds once the claim has concluded and the money has been released for payment to Palmer.
¶ 11 Congress has a long history of prohibiting the assignment or transfer of a claim an individual might have against the government. Price v. Forrest, 173 U.S. 410, 423, 19 S.Ct. 434, 438, 43 L.Ed. 749 (1899) (discussing prohibition against assignment of claims against the U.S. government under 31 U.S.C. § 203, formerly Rev.St. § 3477). The U.S. Supreme Court has made clear the assignment and transfer prohibition is for the protection of the government and to prevent fraud upon the Treasury of the United States and is in no way intended to protect the interests of the claimant. Id.
¶ 12 The assignment prohibition addressed in Price is similar to the one at issue in the present case. In Price, the U.S. Supreme Court addressed whether a receiver, appointed by a New Jersey court for the collection of a debt owed by Price, could enjoin Price from obtaining a balance owed him by the U.S. government and demand the funds the government owed to Price be paid to the receiver to extinguish the debt owed by Price. Price, 173 U.S. at 414-16, 19 S.Ct. 434. The anti-assignment clause in question provided that assignment of claims against the government were void unless freely made and attested before witnesses. No such measures to legitimize the assignment were taken in the Price case and the representative of Price's estate argued the receiver was without authority to interfere with payment to Price's heirs as a result.
¶ 13 However, the U.S. Supreme Court said the assignment prohibition statute did not prevent the New Jersey court from ordering Price's funds be paid through the receiver who would hold the proceeds subject to that court's order. Id. at 423-24, 19 S.Ct. 434. The court's ruling was based primarily on the assertion that the assignment and transfer prohibition was not intended to protect Price in any way and was only intended to protect the U.S. government from having to address multiple claimants or organized groups of claimants who might seek to enforce claims to which they had no real relationship. Id. at 423, 19 S.Ct. 434. As a result, the U.S. Supreme Court said that forbidding Price to collect the funds from his claim, except through a receiver, was not inconsistent with the statute prohibiting assignment or transfer of the claim. Id. at 423, 19 S.Ct. 434.
¶ 14 Palmer's case is similar in that the Child Support Enforcement Division acts in much the same capacity as the receiver or creditor did in Price. In keeping with the rationale articulated in Price, 42 U.S.C. § 7385f is compatible with the agency's order which seized Palmer's benefits so that they might be funneled through the Child Support Enforcement Division for payment of Palmer's child support debt.
¶ 15 We hold the district court erred as a matter of law in directing the return of the seized funds to Palmer. The district court order is REVERSED AND THIS CAUSE IS REMANDED for entry of an order consistent with this opinion.
MITCHELL, C.J., and HANSEN, P.J., concur.
NOTES
[1] (k) Payments exempt from administrative offset to collect past-due support being enforced by a State. The Secretary will exempt from administrative offset under this part payments made under means-tested programs when requested by the head of the Federal agency which administers the program. For purposes of this section, means-tested programs are programs for which eligibility is based on a determination that income and/or assets of the beneficiary are inadequate to provide the beneficiary with an adequate standard of living without program assistance. The Secretary may exempt from administrative offset under this section any other class or type of payment upon the written request of the head of the agency which authorizes the payments. In determining whether or not to grant such exemptions, the Secretary shall give due consideration to whether administrative offset would tend to interfere substantially with or defeat the purposes of the payment agency's