2010 OK CIV APP 45

**POTEAU VALLEY IMPROVEMENT AUTHORITY, Appellant,**

v.

**OKLAHOMA PUBLIC EMPLOYEES RETIREMENT SYSTEM, Appellee.**

**No. 105,915.**

Court of Civil Appeals of Oklahoma, Division No. 3.

March 25, 2010.

Dean E. Warren, Ranada D. Adams, Poteau, OK, and Richard Mildren, Oklahoma City, OK, for Appellant.

Joseph A. Fox, Oklahoma City, OK, for Appellee.

LARRY JOPLIN, Presiding Judge.

¶ 1 Appellant, Poteau Valley Improvement Authority (PVIA), seeks review of the trial court order affirming a decision of the Oklahoma Public Employees Retirement System (OPERS) Board of Trustees to charge PVIA for unremitted retirement benefits of an employee. PVIA complains the trial court and OPERS erred as a matter of both fact and law.

¶ 2 Jeffery Goble, the PVIA employee, had been employed with PVIA since PVIA entered the OPERS retirement system in 1993. However, on the advice of an OPERS representative, Goble was not included in the PVIA/OPERS retirement because he was also a volunteer fireman. PVIA and Goble were told by the OPERS representative that Goble could not participate in two different state funded retirement systems and Goble

opted to continue his retirement in the firefighters' system.[1] As a result, for over thirteen years neither Goble nor PVIA made OPERS retirement contribution payments on Goble's behalf.

¶ 3 Contrary to the earlier OPERS advice, the Oklahoma Legislature specifically provided for wider retirement eligibility for volunteer firefighters in 74 O.S. Supp. 2005 § 902(13)(b), a provision which existed largely in its present form in 1993, when PVIA joined OPERS.[2] The OPERS representative, PVIA and Goble were apparently unaware of the volunteer firefighters provision in § 902.

¶ 4 In January 2007, the Oklahoma Public Employees Retirement System sent an invoice to the Poteau Valley Improvement Authority (PVIA) in the amount of $57,324.29,

---

1. Goble retired as a volunteer firefighter in October 2003 and the record reflects his monthly retirement benefit from the Oklahoma Firefighter's Pension Retirement System is $144.50.

2. 74 O.S. Supp.2005 § 902(13)(b):

A class or several classes of employees who are covered by Social Security and are not covered by or eligible for and will not become eligible for another retirement plan authorized under the laws of this state, which is in operation on the effective date, and when the qualifications for employment in such class or classes are set by state law; and when such class or classes of employees are employed by a county or municipal government pursuant to such qualifications; and when the services provided by such employees are of such nature that they qualify for matching by or contributions from state or federal funds administered by an agency of state government which qualifies as a participating employer, then the agency of state government administering the state or federal funds shall be deemed an eligible employer, but only with respect to that class or those classes of employees as defined in this subsection; provided, that the required contributions to the retirement plan may be withheld from the contributions of state or federal funds administered by the state agency and transmitted to the System on the same basis as the employee and employer contributions are transmitted for the direct employees of the state agency. *The retirement or eligibility for retirement under the provisions of law providing pensions for service as a volunteer fire fighter shall not render any person ineligible for participation in the benefits provided for in Section 901 et seq. of this title.* An employee of any public or private trust in which a county, city or town participates and is the primary beneficiary shall be

deemed to be an eligible employee for the purpose of this act only.
(emphasis added).
Section 902(14)(b), as it existed in July 1992:
(b) A class or several classes of employees who are covered by Social Security and are not covered by or eligible for and will not become eligible for another retirement plan authorized under the laws of this state, which is in operation on the effective date, and when the qualifications for employment in such class or classes are set by state law; and when such class or classes of employees are employed by county or municipal government pursuant to such qualifications; and when the services provided by such employees are of such nature that they qualify for matching by or contributions from state or federal funds administered by an agency of state government which qualifies as a participating employer, then the agency of state government administering the state or federal funds shall be deemed an eligible employer, but only with respect to that class or those classes of employees as defined in this subsection; provided, that the required contributions to the retirement plan may be withheld from the contributions of state or federal funds administered by the state agency and transmitted to the System on the same basis as the employee and employer contributions are transmitted for the direct employees of the state agency. *The retirement or eligibility for retirement under the provisions of law providing pensions for service as a volunteer fire fighter shall not render any person ineligible for participation in the benefits provided for in this act.* An employee of any public or private trust in which a county, city or town participates and is the primary beneficiary shall be deemed to be an eligible employee for the purpose of this act only[.]
(emphasis added).

demanding payment be made to OPERS by March 30, 2007 for the unpaid participating service of Goble. The January 2007 invoice to PVIA included both PVIA's employer share of unpaid contributions, as well as Goble's employee share.

¶5 PVIA consequently sought relief before the OPERS Board of Trustees, which conducted a hearing on June 13, 2007. The Board issued a decision on July 27, 2007, denying PVIA's request to forego payment of the $57,324.29. PVIA appealed the decision to the Oklahoma County District Court, which affirmed the Board's decision. It is from the district court's order that PVIA brought this appeal.

¶6 The Oklahoma Administrative Procedures Act governs the appeal from a decision of the OPERS Board of Trustees. *Stipe v. State, ex rel. Bd. Tr. of Oklahoma Public Employees Retirement Sys.*, 2008 OK 52, ¶¶ 4–6, 188 P.3d 120. An appellate court cannot substitute its judgment for that of the agency on the agency's factual determinations. *Oklahoma Dep't of Public Safety v. McCrady*, 2007 OK 39, ¶ 10, 176 P.3d 1194. However, if the appellate court determines the substantial rights of the petitioner have been prejudiced, due to an error in applying the law, the appellate court "may set aside or modify the order, or reverse it and remand it to the agency for further proceedings." *Stipe*, 188 P.3d at 122. Where the facts are not in dispute and the appellate court is left to consider only a question of law, the appellate court reviews the appealed from decision by a de novo standard. *Stipe*, 188 P.3d at 122 (citing *State ex rel. Porter v. Ferrell*, 1998 OK 41, 959 P.2d 576, 577).

¶7 The OPERS Board made extensive findings of fact in its July 2007 order and the record below reveals no material issue of fact presented in this appeal. The OPERS Board found Goble's participation in OPERS was mandatory, so that Goble could not have rightfully declined OPERS membership in 1993. 74 O.S.2001, § 925.[3] The Board also found § 902 permitted Goble to participate in

two retirement programs, so that the mandatory provisions of § 925 applied to Goble, as it did to all other PVIA employees.

■ ¶8 PVIA first claims that OPERS is estopped from pursuing payment for Goble's retirement, because it was PVIA's reliance on the misinformation provided by the OPERS representative that caused Goble's exclusion from the OPERS system. Equitable estoppel generally prevents one party from taking a position inconsistent with an earlier action that places the relying party at a disadvantage. *Strong v. State, ex rel. Oklahoma Police Pension and Retirement Board*, 2005 OK 45, ¶ 9, 115 P.3d 889, 893–94. Although the doctrine of equitable estoppel does not generally operate against public entities, such as OPERS, there are some exceptions and PVIA claims such an exception applies in this case, asserting OPERS demand is against public policy. *Strong v. State, ex rel. Oklahoma Police Pension and Retirement Board*, 2005 OK 45, ¶ 9, 115 P.3d 889, 893–94; *Burdick v. Indep. School Dist. No. 52 of Oklahoma County*, 1985 OK 49, 702 P.2d 48, 53. PVIA claims the violation of public policy in this case stems from making PVIA pay for a mistake not of its own making.

■ ¶9 However, the governmental shield against estoppel is formidable. A "stronger, more compelling policy or interest must be advanced before estoppel may be invoked against either the state or a public agency." *Strong*, 115 P.3d at 894. While PVIA's assertion that its reasonable reliance on OPERS' misrepresentations and mistake is compelling, something the OPERS Board indicated in its order, it is not such an offense to public policy that it reaches the stronger, more compelling policy or interest that must exist in order to claim estoppel against a public entity.

■ ¶10 PVIA's argument loses much of its strength in light of the existence of § 902 and its specific provisions addressing dual retirement for the volunteer firefighter.

---

**3.** All employees of participating employers who are eligible or may hereafter become eligible to be members of the system as provided by this act shall, as a condition of continuing employment or as a condition of obtaining employment with a participating employer, become members of the system. 74 O.S.2001 § 925 (This law took effect May 6, 1963).

A public official, such as the OPERS representative who made the misstatements, is not empowered to bind his agency to those misstatements and this is especially true when the official cites information directly contra to an existing law. *Strong*, 115 P.3d at 893. The public official was bound by the law and his ignorance of it did not absolve PVIA of having to follow the law. *Id.* "Persons dealing with public officials are charged with notice of the limitations on [that public official's] power[;]" this includes PVIA and its dealings with OPERS. *Id.* at 894. "Generally, estoppel is not imposed merely where a party is given incorrect information or a mistake occurs." *Id.* PVIA has failed to demonstrate how the misinformation given by the OPERS representative differs from the example provided in *Strong*, which would warrant a result that departs from the general rule that estoppel does not apply to public entities.

¶ 11 Section 917(7) of title 74 provides:

When any error in calculation or participation coverage to a prior or current employee exists, it shall be the responsibility of the participating employer which made the error to pay the amount determined by the Board pursuant to Section 913.5 of this title. This obligation of the participating employer to pay the amount due pursuant to this section shall be considered a current obligation of the employer until the amount is paid in full, regardless of the dates of the periods of service.

It is clear that PVIA made a mistake in Goble's participation coverage, albeit relying on incorrect information provided by OPERS. However, § 917(7) does not offer any reprieve from the penalty for the employer who acts reasonably on the misinformation of others. The statute provides only the mistake of not contributing what should have been contributed and the obligation to pay upon discovery of the mistake. The Legislature's approach makes clear that it is the employer who must bear the costs of the mistake, regardless of the circumstances under which it occurred and thus PVIA cannot assert estoppel against OPERS in this case, even though OPERS' misinformation precipitated PVIA's mistaken non-payment of retirement contributions for Goble.

■ ¶ 12 PVIA also challenges the decision to assess the employee portion of the retirement contribution in addition to the unpaid employer contribution. Consideration of this issue is aided by an understanding of the development of § 917(7), amended in 1992 and 1993.[4]

When any error in calculation or participation coverage to a prior or current employee exists, it shall be the responsibility to the participating employer which made the error *to pay the contribution and any interest charges or other costs levied against the employee.*

74 O.S. Supp.1992 § 917(7) (emphasis added). The statute was amended in 1993 to read:

(7) When any error in calculation or participation coverage to a prior or current employee exists, it shall be the responsibility of the participating employer which made the error *to pay the amount determined by the Board pursuant to Section 913.5 of this title.*

74 O.S. Supp.1993 § 917(7) (emphasis added).[5]

---

4. *See Magnolia Pipe Line Co. v. Oklahoma Tax Comm'n*, 196 Okla. 633, 1946 OK 113, ¶ 11, 167 P.2d 884, 888 (where statute is amended, the legislature intended to a) effect a change in the existing law or b) clarify that which was previously doubtful, looking at statute prior to the amendment can aid in determining the nature of the amendment).

5. Section 913.5 of title 74 was also amended in 1993, adding subsection B, and read as follows:

A. The Board of Trustees shall adopt rules for computation of the purchase price for service credit. These rules shall base the purchase price for each year purchased on the actuarial cost of the incremental projected benefits to be purchased. The purchase price shall represent the present value of the incremental projected benefits discounted according to the member's age at the time of purchase. Incremental projected benefits shall be the difference between the projected benefit said member would receive without purchasing the service credit and the projected benefit after purchase of the service credit computed as of the earliest age at which the member would be able to retire. Said computation shall assume an unreduced benefit and be computed using interest and mortality assumptions consistent with the actuarial assumptions adopted by the Board of Trustees for purposes of preparing the annual actuarial evaluation.

428

¶13 From its enactment in 1985, until its 1993 amendment, 74 O.S. § 917(7) required the employer to exclusively bear the costs of a calculation or participation coverage error, providing *"it shall be the responsibility to the participating employer which made the error to pay the contribution and any interest charges or other costs levied against the employee."* And while the language changed in 1993 to include a reference to § 913.5 and the implementation of the actuarial cost valuation method for calculating the payment needed to correct an error of non-payment, there is nothing in the 1993 amendment which relieved the employer of its exclusive obligation to bear the costs of a § 917(7) contribution or calculation error. The 1993 amendments of §§ 917(7) and 913.5, which moved away from simple reimbursement of the unpaid contribution, was more finely tuned to provide an actuarial cost accounting that was intended to better fund the retirement benefit itself. *See,* Question Submitted by Administrator of Oklahoma Workers' Compensation Court, 1995 OK AG 94, ¶¶ 11–15. However, the new accounting did not change the exclusive obligation of the employer that had existed under the previous statute. While § 913.5 has been amended since 1993, adding subsections B and C, neither § 917(7) nor § 913.5 has been amended to remove the employer's exclusive obligation.

¶14 A statutory amendment is designed to do one of two things: (1) effect change in an existing law or (2) clarify a statute. *Magnolia Pipe Line Co. v. Oklahoma Tax Comm'n,* 167 P.2d at 888. Section

917(7) was amended to effect a change and implement a different accounting procedure, but the amendment did not change the source of the obligation; if the employer makes a calculation or participation error, the employer alone bears the costs of that mistake, just as the employer has since 1985. Title 74 makes no alternative provisions.

¶15 Therefore, despite PVIA's reliance on information provided by the organization now demanding payment, OPERS, and the fact that Goble made no employee contributions toward his own PVIA retirement for over thirteen years, the statute provides that PVIA is exclusively responsible for rectifying this participation and contribution error. While PVIA has complained of unfairness and OPERS has acknowledged PVIA's compelling position, it is not the function of this court to determine whether the statute is the most fair method of correcting contribution errors. *Fent v. Oklahoma Capitol Improvement Auth.,* 1999 OK 64, 984 P.2d 200, 204.[6] The law demands the employer bear the costs of this mistake and no provisions exist to permit a shifting of this obligation.

¶16 The order of the trial court is AFFIRMED.

BELL, V.C.J. and MITCHELL, J., concur.

B. In the event that the member is unable to pay the purchase price provided for in this section by the due date, the Board of Trustees shall permit the members to amortize the purchase price over a period not to exceed sixty (60) months. Said payments shall be made by payroll deductions unless the State Board permits an alternate payment source. The amortization shall include interest in an amount not to exceed the actuarially assumed interest rate adopted by the Board of Trustees for investment earnings each year. Any member who ceases to make payment, terminates, retires or dies before completing the payments provided for in this section shall receive prorated service credit for only those payments made, unless the unpaid balance is paid by said member, his or her estate or successor in interest within six (6) months after

said member's death, termination of employment or retirement, provided no retirement benefits shall be payable until the unpaid balance is paid, unless said member or beneficiary affirmatively waives the additional six-month period in which to pay the unpaid balance. The Board of Trustees shall promulgate such rules as are necessary to implement the provisions of this subsection.

6. "It is also firmly recognized that it is not the place of this Court, or any court, to concern itself with a statute's propriety, desirability, wisdom, or its practicality as a working proposition. Such questions are plainly and definitely established by our fundamental law as functions of the legislative branch of government." *Fent,* 984 P.2d at 204 (internal citations omitted).