2011 OK 89

**Donald D. THOMPSON, and Paula R. Thompson, Petitioners/Appellants,**

**v.**

**STATE of Oklahoma, ex rel., BOARD OF TRUSTEES OF the OKLAHOMA PUBLIC EMPLOYEES RETIREMENT SYSTEM and The Oklahoma Employees Retirement System, Respondents/Appellees.**

**Nos. 107,661, 107,662.**

Supreme Court of Oklahoma.

Oct. 25, 2011.

Clark O. Brewster, Robert Nigh, Jr., Marvin G. Lizama, Brewster & De Angelis, P.L.L.C., Tulsa, Oklahoma; Joe E. White, Jr., Charles Weddle, White & Weddle, P.C., Oklahoma City, Oklahoma, for appellants.

Marc Edwards, Catherine L. Campbell, Phillips Murrah P.C., Oklahoma City, Oklahoma; Joseph A. Fox, General Counsel Oklahoma Public Employees Retirement System, Oklahoma City, Oklahoma, for appellees.

WINCHESTER, J.

¶ 1 Donald D. Thompson, petitioner/appellant, appeals the forfeiture of his judicial retirement benefits ordered by the Oklahoma Public Employees Retirement System Board of Trustees[1] and affirmed by the District Court of Oklahoma County. This Court retained the matter for review.

## I. FACTS AND PROCEDURE

¶ 2 On August 18, 2004, Mr. Thompson submitted his Declaration of Intent to Retire, which was approved August 31, 2004. He began receiving his pension benefits. On January 20, 2005, the State of Oklahoma filed charges against him for Indecent Exposure. The trial ended on June 29, 2006, with a guilty verdict returned by the jury on all four counts.[2] The charges on which he was convicted occurred while Mr. Thompson was on the bench presiding over contested hearings and jury trials. Court personnel present during those trials testified they saw Mr. Thompson expose himself.

¶ 3 The prosecuting attorney in the criminal case that resulted in Mr. Thompson's felony convictions notified the Oklahoma Public Employees Retirement System (OP-

1. The Board of Trustees of the Oklahoma Public Employees Retirement System manages the Uniform Retirement System for Justices and Judges and the State Judicial Retirement Fund. 20 O.S.Supp.2010, § 1108(A).

2. On or between these dates, the individual felonies of indecent exposure were committed: Count 1, May 5, 2003 and June 10, 2003; Count 2, August 21, 2003 and August 26, 2003; Count 3, September 8, 2003 and September 18, 2003, and Count 4, October 14, 2002 and October 25, 2002.

ERS) by letter of the felonies. On September 12, 2006, OPERS notified Mr. Thompson in writing that as a result of his conviction his judicial retirement pension benefits must be forfeited. Mr. Thompson requested an administrative hearing to contest the forfeiture. Ultimately, the OPERS Board of Trustees adopted the recommendation of a hearing examiner and on February 19, 2009, entered a final agency order sustaining the forfeiture of Mr. Thompson's retirement benefits.

■ ¶ 4 In the Board's Findings of Fact, it determined that Mr. Thompson had served as a State Representative from November 20, 1974, through November 19, 1980, with six years of participating service in OPERS. These benefits are not in dispute.[3] Mr. Thompson was appointed as District Judge in and for Creek County, Oklahoma, in February of 1982. In 1986, 1990, 1994, 1998 and 2002 he remained in office by election. He had 23 years of participating service in the Uniform Retirement System for Justices and Judges, February 12, 1982, through August 18, 2004. He retired before the expiration of his last term and began to receive his benefits in September of 2004. His gross monthly benefit at the time of his retirement was $7,489.91, and with a cost of living adjustment, his income increased to $7,789.51, effective July 1, 2006. Mr. Thompson's own contributions to URSJJ were not subject to forfeiture.

## II. BURDEN OF PROOF

¶ 5 Mr. Thompson asserts that OPERS violated the Oklahoma Administrative Procedures Act when it forced him to forfeit his retirement benefits without proper notice as required by 75 O.S.2001, § 309, nor did he receive an individual proceeding providing him an opportunity to proffer evidence and present witnesses on his behalf as required by 75 O.S.2001, § 310. He further states OPERS' decision on September 12, 2006, to refuse further payment of his retirement benefits was premature, without any supporting evidence, and solely the result of hearsay, conjecture and innuendo.

¶ 6 The facts reveal that Tom Spencer, the Executive Director of OPERS made the decision to require forfeiture of Mr. Thompson's retirement benefits, and informed him by letter of that action. Mr. Spencer included that if Mr. Thompson was aggrieved by the decision, he had the right to an administrative hearing before the Board of Trustees pursuant to the Administrative Procedures Act, and that the hearing was his exclusive remedy and must be requested in writing within thirty days of the receipt of the letter. This letter was not a final determination of the forfeiture, but served in a similar manner as a notice to show cause.

■ ¶ 7 A show-cause order is not a binding opinion on the merits in an issue before a court, it is merely the means prescribed by law, in the nature of process, for bringing the party into court to answer certain demands.[4] It does not shift the burden of proof, but is merely a method of summary procedure, like a summons.[5] A party to a lawsuit may shift the burden of going forward by producing some evidence and the opposing party may introduce evidence to

---

**3.** The forfeiture clause in title 51, § 24.1 was added by the 1st Extr. Sess., ch. 1, § 3, emerg. eff. September 8, 1981. Although this section has been amended by 1987 Okla. Sess. Laws, ch. 30, § 1, 1998 Okla. Sess. Laws, ch. 419, § 8, and 2009 Okla. Sess. Laws, ch. 77, § 1, this Court in *Stipe v. State ex rel. Bd. of Trustees of OPERS*, 2008 OK 52, ¶ 8, 188 P.3d 120, 122–123, and the Court of Civil Appeals, *Nida v. OPERS Bd. Of Trustees*, 2004 OK CIV APP 85, ¶ 17, 99 P.3d 1224, 1228, has treated the effective date of the forfeiture statute as September 1, 1981, even though each revision includes a similar phrase seeming to except retirement funds vested on the "effective date of this act." The Legislature has made no changes in the wording since *Nida*, so

we may conclude the Legislature has agreed to the 1981 date as the effective date of the act. "[L]egislative silence, when it has authority to speak, may be considered as giving rise to an implication of legislative intent." *City of Duncan v. Bingham*, 1964 OK 165, ¶ 12, 394 P.2d 456, 460.

**4.** *See Goldstein v. United States*, 11 F.2d 593, 594 (5th Cir.1926) (*cert. den.* 271 U.S. 667, 46 S.Ct. 483, 70 L.Ed. 1141), *Morehouse v. Pacific Hardware & Steel Co.*, 177 F. 337, 339 (9th Cir.1910).

**5.** *Chambers v. Blickle Ford Sales, Inc.*, 313 F.2d 252, 257 (2nd Cir.1963).

explain the contested matters.[6]

¶ 8 The transcript of Mr. Spencer's testimony reveals he decided to notify Mr. Thompson of the forfeiture after examining the judgment and sentence sent by the district attorney. The district attorney's accompanying letter to Mr. Spencer concluded that the crimes for which Mr. Thompson was convicted occurred while he was presiding as judge over a trial. Mr. Thompson requested a hearing. At that hearing the hearing examiner placed the burden of going forward with the evidence on Mr. Thompson, so he presented his evidence after the hearing examiner already had before him the full record of Mr. Thompson's final felony convictions.

¶ 9 When Mr. Thompson challenged this procedure of providing notice of forfeiture on appeal, OPERS answered that it must act within the parameters of 51 O.S.2001, § 24.1(A),[7] which provides in pertinent part that the attorney responsible for prosecuting the elected state officer shall notify the retirement system in which such officer is enrolled of the forfeiture of such officer's retirement benefits. The wording of the statute appears to place the responsibility on the prosecuting attorney to determine whether there is cause to believe the felony offense violated the officer's oath of office and to notify the retirement system that the officer must forfeit retirement benefits. Pursuant to this statute, the action of informing the state officer that the benefits must be forfeited is merely a perfunctory act of OPERS following its notification by the prosecuting attorney. The prosecuting attorney has identified the offense and made the preliminary conclusion that the officer violated the oath of office.

¶ 10 After the prosecutor's initial conclusion that forfeiture is indicated and OPERS relays that conclusion to the state officer who is accused of violating the oath of office, that officer is entitled to an individual proceeding, but may still choose not to contest the accusation. If the officer chooses to contest the accusation, an individual proceeding must be held providing an opportunity for the officer to proffer evidence and present witnesses, all pursuant to 75 O.S.2001, § 309. At such hearing the burden is on the accusing party to show the officer has violated his oath of office.

¶ 11 The hearing examiner expressed his view that the hearing Mr. Thompson requested placed the burden of proof on him concerning whether his conviction violated his oath of office. Determining that a state official has violated his oath of office is an evidentiary matter. *Stipe v. State ex rel. Bd. of Trustees of Oklahoma Public Employees Retirement System*, 2008 OK 52, ¶ 16, 188 P.3d 120, 124. The burden of proof remains with OPERS to establish facts tending to show that the state officer violated his oath of office during the commission of a felony. In this case, the judgment and sentence in the criminal matter established a prima facie case against Mr. Thompson. A prima facie case is made out of such evidence as in the judgment of the law is sufficient to establish a given fact, and if unrebutted, remains sufficient to uphold a judgment in favor of the issue that it supports. *Sides v. John Cordes, Inc.*, 1999 OK 36, ¶ 14, 981 P.2d 301, 306; *Glenn Smith Oil v. Sheets*, 1985 OK 56, ¶ 9, 704 P.2d 474, 478. A felony conviction for indecent exposure on each of four counts, which acts occurred during four trials in which Mr. Thompson presided as judge, is sufficient to establish OPERS burden of proof that Mr. Thompson's retirement benefits are subject to forfeiture pursuant to the statute.

¶ 12 With a prima facie case established, the hearing examiner properly placed the responsibility on Mr. Thompson to proceed with the evidence to explain or contradict that his felony convictions did not violate his oath of office. The examiner mistakenly called this the "burden of proof," but it was actually the burden of proceeding with the evidence. Mr. Thompson presented as his defense that the felonies he committed did

---

6. *See Chambers*, 313 F.2d at 256.

7. The statute has subsequently been amended by 2009 Okla. Sess. Laws, ch. 77, § 1. The above language cited is now found in title 51 O.S.Supp. 2010, § 24.1(J).

not disrupt the trials. While that is an attempt to rebut the prima facie case, it is not a successful defense.

■ ¶ 13 Mr. Thompson received his requested hearing before a hearing examiner, and cannot claim that he failed to receive advance notice and an opportunity to fully present his case. The hearing examiner informed both parties near the conclusion of the hearing that:

> "[O]ne of my main purposes is to make sure you get all your arguments, all your evidence, everything you want me to consider, everything you want the board to consider, everything you want an appellate court to consider because all that is based on this record, so I'm going to do my best to make sure that you get everything before anybody that's going to see it that you can." [8]

¶ 14 The uncontested facts revealed multiple felonies committed while Mr. Thompson presided over jury trials, and the offended parties included court personnel. Court reporters observed the felonious exposure of Mr. Thompson's private parts, and testified to the fact during the criminal trial. That trial resulted in conviction of felonies. Those felonies violated Mr. Thompson's oath of office. This uncontested evidence presented by OPERS is sufficient to support forfeiture.

### III. RIGHTS OF BENEFICIARY

■ ¶ 15 Mr. Thompson's wife, Paula R. Thompson, repeatedly sought participation in the administrative proceedings regarding forfeiture of Mr. Thompson's retirement benefits, and at each step was denied participation. She claims her due process rights were denied. She further claims that she has a vested property right because the pension benefits are an asset of her marriage to Mr. Thompson, and she asserts that all of the vested pension benefits were accrued during their marriage. Mrs. Thompson supports her argument by citing divorce cases. Those holdings are not applicable to the essential issue now before us, and that is whether a wife, such as Mrs. Thompson who was married to Mr. Thompson at the time of the forfeiture hearing, has a vested right to her spouse's retirement benefits when those benefits have been forfeited by operation of law.

■ ¶ 16 OPERS argues that she is a surviving spouse beneficiary to one who has no current rights to his pension benefits. Determining whether an individual has been denied procedural due process is a two-step inquiry. First, we determine whether the individual possesses a protected interest to which due process protection applies, and if so, whether the individual was afforded an appropriate level of process. *In re A.M.*, 2000 OK 82, ¶ 7, 13 P.3d 484, 487.

¶ 17 The statutes governing the Uniform Retirement System for Justices and Judges are found within title 20, Chapter 16. Section 1102C provides options for payment of benefits to a spouse. Subsection A reveals those benefits are available to a spouse or surviving spouse. In *Woods v. City of Lawton*, 1992 OK 167, 845 P.2d 880, the Court held that membership in any pension or retirement system of the state, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, with the rights being defined by the limits of the contract, which may provide that vesting is subject to contingencies that can cause a forfeiture. *Woods*, 1992 OK 167, ¶ 12, 845 P.2d at 883. Accordingly, contingencies provided by statute, more specifically, § 24.1 of Title 51, can provide that a violation of a state officer's oath of office results in a forfeiture of retirement benefits, in which case the officer would no longer have a vested interest in those benefits. If the officer has no vested interest in the benefits, neither does the spouse. Because this spouse has no protected interest, due process protection does not apply. The agency and the district court did not err in denying Mrs. Thompson's participation as a party in the forfeiture proceedings against Mr. Thompson.

### IV. FORFEITURE OF BENEFITS OF OFFICE

■ ¶ 18 Mr. Thompson asserts that strict construction of the forfeiture statute

---

8. Original Record at 260.

requires that it must apply only to his oath of office filed January 15, 2003, the last oath of office he took, so that he would forfeit only the retirement benefits from his last term in his judicial office. OPERS answers that the statute, 51 O.S.2001, § 24.1, does not support this position.

 ¶ 19 This state has a strong policy against forfeitures, and will neither search for a construction that will bring about a forfeiture, nor adopt a meaning that would produce such an effect unless the language of the statute under consideration clearly demonstrates the legislature intended that a forfeiture take place. *Hendrick v. Walters*, 1993 OK 162, ¶ 7, 865 P.2d 1232, 1238–1239. The 1998 version of § 24.1 [9] provided in pertinent part that if an elected official during the term he is elected is found guilty of a felony, he shall be automatically suspended from office, and upon final conviction shall vacate the office. If the felony violates his oath of office he shall forfeit "all the benefits of said office" including retirement benefits provided by law. The forfeiture is limited to the benefits accruing to the officer after 1981.[10] Mr. Thompson argues that the word-

ing of the statute restricts the forfeiture to his last term in office. We cannot agree with this construction of the statute. The purpose of § 24.1(A) is to ensure that public officials who commit serious criminal offenses, particularly those which violate their oath of office, lose their rights to serve further and to the benefits of office. *Nida v. OPERS*, 2004 OK CIV APP 85, ¶ 15, 99 P.3d 1224, 1227.

¶ 20 The statute covers elected state and county officials and state employees. If this Court accepted Mr. Thompson's construction of the statute, officials who were elected to multiple terms in office would be in a superior position to state employees who are hired and worked for exactly the same number of years. Under his suggested construction, Mr. Thompson would lose less than four years of benefits after serving twenty-two years as a district judge, while an employee of the state who was employed twenty-two years and commits a felony that violates the oath of office taken when the employment commenced, would lose a total of twenty-two years of benefits. We see no reason to believe the legislature intended such a disproportionate penalty between state employees

9. A. Any elected or appointed state or county officer or employee who, during the term for which he or she was elected or appointed, is, or has been, found guilty by a trial court of a felony in a state or federal court of competent jurisdiction shall be automatically suspended from said office or employment. The Governor shall appoint an interim successor to serve during the period of suspension of any county commissioner or any state officer other than a member of the State Legislature. A vacancy created by the suspension of a member of the State Legislature shall be filled as provided in Section 20 of Article V of the Oklahoma Constitution. A vacancy created by the suspension of a county officer other than a county commissioner shall be filled as provided by Section 10 of this title. In the event any elected or appointed state or county officer or employee who, during the term for which he or she was elected or appointed, pleads guilty or nolo contendere to a felony or any offense involving a violation of his or her official oath in a state or federal court of competent jurisdiction, he or she shall, immediately upon the entry of said plea, forfeit said office or employment. Any such officer or employee upon final conviction of, or pleading guilty or nolo contendere to, a felony in a state or federal court of competent jurisdiction shall vacate such office or employment and if such felony or other offense violates his oath of office shall forfeit all benefits of said office or employment, including, but not limited to, retire-

ment benefits provided by law, however, the forfeiture of retirement benefits shall not occur if any such officer or employee received a deferred sentence, but retirement benefits shall not commence prior to completion of the deferred sentence; provided however, that such forfeiture of retirement benefits shall not include such officer's or employee's contributions to the retirement system or retirement benefits that are vested on the effective date of this act. Any claims for payment of salary or wages, or any claims for payment of any other benefits, to any such officer or employee suspended from or forfeiting his or her office or employment shall be rejected by the proper authority. Such suspension or forfeiture shall continue until such time as said conviction or guilty plea is reversed by the highest appellate court to which said officer or employee may appeal. The attorney responsible for prosecuting such elected or appointed state or county officers or employees shall notify the retirement system in which such officer or employee is enrolled of the forfeiture of such officer's or employee's retirement benefits.

10. See *Stipe v. State ex rel. Bd. of Trustees of OPERS*, 2008 OK 52, ¶ 8, 188 P.3d 120, 122–123; and *Nida v. OPERS Bd. Of Trustees*, 2004 OK CIV APP 85, ¶ 17, 99 P.3d 1224, 1228.

and state officers for violation of their oaths of office.

## V. ORAL ARGUMENT, ATTORNEY FEES AND COSTS

¶ 21 In the last two paragraphs of his reply brief, Mr. Thompson requests oral argument, attorney fees and costs. Based on the uncontested facts included in the original record, we see no reason to grant oral argument. Mr. Thompson also requested attorney fees. No argument is made, nor is any statute or case cited to support an award of attorney fees and costs, and this request is denied.

AFFIRMED.

ALL JUSTICES CONCUR.