SWADLEY’S FOGGY BOTTOM KITCHEN V. BREUKLANDER
2025 OK CIV APP 32
Case Number: 121019
Decided: 02/13/2025
Mandate Issued: 10/09/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2025 OK CIV APP 32, __ P.3d __

 

SWADLEY'S FOGGY BOTTOM KITCHEN, an Oklahoma limited liability company, Plaintiff/Appellant,
vs.
CURT BREUKLANDER, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE SHEILA D. STINSON, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART
AND REMANDED FOR FURTHER PROCEEDINGS

Bryan N.B. King
C. Eric Shephard
A. Wayne Billings
FELLERS, SNIDER, BLANKENSHIP,
BAILEY & TIPPENS, P.C.
Oklahoma City, Oklahoma For Plaintiff/Appellant

Conner L. Helms
Scott A. May
HELMS LAW FIRM
Oklahoma City, Oklahoma For Defendant/Appellee

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Swadley's Foggy Bottom Kitchen, an Oklahoma limited liability company, (Plaintiff, or SFBK) appeals from the district court's order filed in January 2023 dismissing a portion of SFBK's petition pursuant to the Oklahoma Citizens Participation Act (OCPA), 12 O.S. 2021 §§ 1430-1440, and certifying its order as final pursuant to 12 O.S. 2021 § 994. It also appeals from the district court's March 2023 order awarding attorney fees, costs, and a sanction pursuant to the OCPA. Moreover, Curt Breuklander (Defendant, or Mr. Breuklander) appeals from the district court's order filed in April 2023 denying his motion to dismiss SFBK's second amended petition. In May 2023, the two appeals were consolidated under Case No. 121,019 by order of the Oklahoma Supreme Court. Based on our review, we affirm the district court's January 2023 and April 2023 orders; however, we reverse the district court's March 2023 order because it fails to contain a computation to support the award. We remand for further proceedings in a manner consistent with this Opinion.

BACKGROUND

¶2 As asserted by Mr. Breuklander in his appellate briefing, SFBK "entered into an agreement with the State of Oklahoma Tourism Department . . . to refurbish and run restaurants in several Oklahoma state parks," and, "[w]hile [SFBK] was under contract with the State, [Mr. Breuklander] discovered that [SFBK] was improperly billing the State so that [SFBK] would receive more reimbursement money from the State than was actually owed."

¶3 SFBK initiated this action on June 21, 2022, alleging Mr. Breuklander "repeatedly and falsely defamed [SFBK] in the news media, on social media, and with various governmental agencies." 

¶4 SFBK also alleged that Mr. Breuklander "abruptly terminated his employment with the Swadley Family Businesses

¶5 SFBK alleged the resulting "blitz of negative media attention" -- particularly stemming from "Breuklander . . . falsely alleg[ing] that [SFBK] engaged in fraudulent or other wrongful activity in connection with its Agreements with the State" -- "has irreparably damaged the business and reputation of [SFBK]." SFBK asserted as "Count I" against Mr. Breuklander a theory of "Business Disparagement and Defamation" arising from Mr. Breuklander's written and oral "false statements about [SFBK]" that "have been published, republished, and self-published." SFBK described the statements as "disparaging and defamatory" and "defamatory per se, unjustified, untrue, and unprivileged." 

¶6 As "Count II," SFBK requested "Indemnification and/or Contribution," asserting: "To the extent there is any truth" to Mr. Breuklander's statements, Mr. Breuklander was "the person who was at all times in charge of such practices" and, "[i]f [he] engaged in any form of fraud or illegal activity, he did so without the knowledge or approval of [SFBK] or anyone involved with Swadley Family Businesses." SFBK therefore requested that if it "is held liable for such conduct (in whole or in part), Breuklander should be required to fully indemnify [SFBK] and/or contribute 100% of any liability [SFBK] may incur because of Breuklander's conduct."

¶7 On August 19, 2022, Mr. Breuklander moved to dismiss SFBK's petition pursuant to the OCPA and, "[a]lternatively," pursuant to 12 O.S. 2021 § 2012(B)(6) for failure to state a claim upon which relief can be granted. 

¶8 On September 6, 2022, SFBK filed a combined response to the motion to dismiss and motion for leave to amend; on September 23, 2022, Mr. Breuklander filed a response to SFBK's motion for leave to amend; and on September 27, 2022, Mr. Breuklander filed his reply to SFBK's response to the motion to dismiss. A hearing was held on October 4, 2022.

¶9 On October 31, 2022, the district court entered its "Order Sustaining Defendant's Motion to Dismiss." Regarding Count I of SFBK's petition and whether the defamation claim should be dismissed pursuant to the OCPA, the court stated as follows:

4. The dismissal inquiry under the OCPA has three stages. The first requires the movant to show that the speech or expressive conduct that is the subject of the suit falls under the protection of the act. [Mr. Breuklander] here was initially required to show that the Plaintiff's suit related to activity protected by the OCPA, e.g., "speech on a matter of public concern." 12 O.S. § 1434

5. If this threshold requirement is met, the plaintiff has the burden in the second stage of demonstrating a prima facie case establishing a viable basis for the suit. 12 O.S. § 1434prima facie case as a matter of law. 12 O.S. § 1434

¶10 The court determined that Mr. Breuklander "met the first stage inquiry," given that

[t]he speech addressed in Plaintiff's petition is [Mr. Breuklander's] statements to law enforcement, government agencies, news media, and on social media [and] involved the Plaintiff's contract with the State of Oklahoma and his belief of overcharging and mismanagement. [Mr. Breuklander] admitted to the statements during his testimony at the hearing on the Motion to Dismiss.

¶11 As to the second stage and whether SFBK demonstrated a prima facie case, the court stated that SFBK "relied on its pleadings" and on an affidavit of Tim Hooper, SFBK's Vice President, verifying the allegations in the petition. 

14. Plaintiff has failed to show by clear and convincing evidence the statements made by [Mr. Breuklander] were false. Plaintiff also failed to meet its burden that any specific statements made by [Mr. Breuklander] were the direct cause of the Plaintiff's cancelled contract with the State of Oklahoma. Plaintiff provided no evidence of lost profits or damage to reputation. Lastly, Plaintiff failed to show by clear and convincing evidence that [Mr. Breuklander] knew or had serious doubts that his statements were false.

15. Based on the absence of evidence of falsity and the alleged damages, Plaintiff failed to show a prima facie case of defamation. . . .

¶12 As to the third stage, the court stated that, "[c]onsidering [its] holding [i.e., in favor of Mr. Breuklander], [it] declines to address the alleged defenses raised by [Mr. Breuklander] in the third phase of the OCPA proceeding."

¶13 Regarding Count II of SFBK's petition, the court addressed whether it should be dismissed for "fail[ing] to state a claim under a cognizable theory," stating it was "appl[ying] 12 O.S. § 2012

¶14 On November 9, 2022, SFBK filed its First Amended Petition. In this amended pleading, SFBK asserted, inter alia:

The bottom line is that [Mr. Breuklander] has lied about [SFBK] in the media in order to cause [SFBK] to lose the Agreements and to get [SFBK] sued by the State . . . . Breuklander has accomplished all this by attributing to [SFBK] the conduct (if any actually occurred) for which Breuklander himself was solely responsible.

In the First Amended Petition, SFBK did not reassert a defamation claim but instead asserted theories of breach of contract, breach of fiduciary duty, and indemnification and/or contribution. 

¶15 On November 30, 2022, Mr. Breuklander filed a motion to dismiss the First Amended Petition. res judicata"; the asserted claims "once again fall under the protections of the OCPA"; and the amended petition "should also be dismissed for failure to state claims[.]"

¶16 On January 4, 2023, the court held a hearing on this second motion to dismiss and on issues, as described by the court, "regarding the refiling of the Petition [and] which claims will survive after a dismissal under the [OCPA]." Counsel for SFBK stated he interpreted the Court's October 2022 order as applying § 2012(B)(6) at least to a portion of the petition and stated: "under 2012(G), we're entitled to amend, unless the Court says [in its order] you can't fix these, which the Court didn't say." The court stated that in light of its OCPA ruling, "I'm not going to consider any allegations to support your Amended Petition that relate to [Mr. Breuklander's] exercise of free speech or any activity protected under the [OCPA]." Counsel for SFBK stated that "none of our amended claims arise under the OCPA" and the focus of the amended pleading is the alleged "liability created by Mr. Breuklander's underlying conduct that was prior in time to and separate factually from any alleged free speech . . . ."

¶17 In the "Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's First Amended Petition" filed on January 19, 2023, the court found as follows:

1. The Court's prior Order entered October 31, 2022 . . . dismissed with prejudice Plaintiff's claims for defamation (Count I) pursuant to the [OCPA], and dismissed Plaintiff's claims for indemnification and contribution without prejudice pursuant to 12 O.S. § 2012

2. The Prior Order did not state whether dismissal was with prejudice or without and did not indicate a ruling on Plaintiff's pending motion for leave to amend. Accordingly, the Court MODIFIES AND CORRECTS the Prior Order as set forth herein. Pursuant to 12 O.S. § 994with prejudice, the Court hereby expressly determines that there is no just reason for delay and expressly directs that the present order be filed as a final judgment, decree, or final order.

3. The Court further finds that to the extent Plaintiff's First Amended Petition relies on facts previously found to be subject to the OCPA, Defendant's Motion should be and hereby is SUSTAINED as to such facts. Defendant's Motion to Dismiss as to Plaintiff's amended claims is also SUSTAINED under 12 O.S. § 2012

4. The Court hereby grants Plaintiff leave to file a Second Amended Petition, but Plaintiff is not allowed to include any of the facts relating to the claim dismissed with prejudice in the Prior Order. . . .

¶18 On January 24, 2023, SFBK filed its Second Amended Petition. Moreover, on January 25, SFBK filed a petition in error in the Supreme Court seeking review of the district court's January 2023 order. In April 2023, SFBK filed an amended petition in error, expanding its appeal to a March 30, 2023 order of the district court awarding attorney fees, costs, and a sanction pursuant to § 1438(A) of the OCPA. In this order, the district court awarded Mr. Breuklander attorney fees in the amount of $45,305, and costs in the amount of $218.50. It also assessed a sanction against SFBK pursuant to § 1438(A)(2) of the OCPA, resulting in an additional $2,500 award to Mr. Breuklander.

¶19 On February 14, 2023, Mr. Breuklander filed a motion to dismiss the Second Amended Petition, and a hearing was held on this motion on April 3, 2023. The court stated at the hearing, "I am finding that the OCPA does not apply to the remaining claims. I think Plaintiff has carved out a petition that removes any type of restriction related to communication that the OCPA was written to protect. . . . The remaining claims and allegations relate to [Mr. Breuklander's] employment and actions that he did or did not take through his employment." Consequently, the court denied Mr. Breuklander's § 2012(B)(6) motion to dismiss the Second Amended Petition.

¶20 The court's findings are reflected in its Order filed on April 10, 2023, an order from which Mr. Breuklander appealed, initiating a separate appeal. As stated above, the two appeals were consolidated under surviving Case No. 121,019 by order of the Supreme Court.

PRELIMINARY ISSUES

¶21 In February 2023, the Oklahoma Supreme Court directed SFBK

to show cause . . . why this appeal should not be dismissed for lack of a final or otherwise appealable order in conformance with 12 O.S.2011 § 994

¶22 SFBK filed a response, and the Supreme Court subsequently entered an order on April 3, 2023, stating that "[SFBK's] response to the Court's show cause order satisfies this Court's jurisdictional inquiry. Accordingly, the appeal of the trial court's January 19, 2023 order dismissing Count I of the petition and certifying the order as final pursuant to 12 O.S. § 994

¶23 Nevertheless, on November 13, 2023, Mr. Breuklander filed a motion to dismiss SFBK's appeal. In an order filed in November 2023, the Supreme Court deferred this motion to the decisional stage of this appeal.

¶24 Mr. Breuklander first argues in his motion that SFBK should have commenced its appeal by filing a petition for certiorari rather than a petition in error, citing to Oklahoma Supreme Court Rule 1.51, which provides: "A proceeding to review a certified interlocutory order shall be commenced by filing a petition for certiorari within 30 days of the date the certification is filed in the trial court." Okla. Sup. Ct. R. 1.51(a), 12 O.S. 2021, ch. 15, app. 1. However, in its January 19, 2023 order, the district court, as above quoted, found:

Pursuant to 12 O.S. § 994with prejudice, the Court hereby expressly determines that there is no just reason for delay and expressly directs that the present order be filed as a final judgment, decree, or final order.

In February 2023, the Oklahoma Supreme Court, as above quoted, directed SFBK "to show cause . . . why this appeal should not be dismissed for lack of a final or otherwise appealable order in conformance with 12 O.S.2011 § 99412 O.S. § 99412 O.S. § 994

¶25 Mr. Breuklander next argues that SFBK seeks "review of allegations of error which were not certified for immediate review." Notably, at the time Mr. Breuklander made this argument, SFBK had yet to file its appellate brief. 12 O.S. § 994

¶26 Mr. Breuklander next argues that SFBK's appeal "was commenced more than thirty (30) days after the Oct. 31 Order was entered." However, a clear implication of the district court's January 2023 order, including its ruling granting SFBK leave to file a Second Amended Petition, is that the October 2022 order was not a final determination with regard to all claims. 12 O.S. § 994

STANDARD OF REVIEW

¶27 We review a district court's decision under the OCPA de novo. Krimbill v. Talarico, 2018 OK CIV APP 37417 P.3d 1240cert. denied.

In Krimbill, this Court held "that the OCPA provides a new summary process/dismissal procedure in certain cases [and that] Oklahoma appellate courts have reviewed decisions pursuant to such procedures by a de novo standard." Id. The OCPA dismissal procedure "requires dismissal if a plaintiff fails to show a prima facie case, and is hence similar to a motion for directed verdict," challenges to which "also are reviewed de novo." Id. Thus, not unlike motions to dismiss generally (which this Court also reviews under a de novo standard), this Court applies a de novo standard of appellate review under "existing precedent and persuasive authority." Id.; see also Ladra v. New Dominion, LLC, 2015 OK 53353 P.3d 529de novo) (citation omitted); 12 O.S. §§ 1430et seq. (setting forth specific procedures for the filing, review, and ruling on motions to dismiss under the OCPA).

Yates v. Gannett Co., 2022 OK CIV APP 41523 P.3d 69

Our review of the trial court's rulings under the OCPA requires analysis of issues of statutory interpretation; in addition, "disputed questions of material fact cannot be resolved in an OCPA dismissal proceeding." Krimbill v. Talarico, 2018 OK CIV APP 37417 P.3d 1240id. ¶ 4, pursuant to which we claim "plenary, independent, and non-deferential authority to reexamine [the] trial court's legal rulings," Martin v. Gray, 2016 OK 114385 P.3d 64

Lewis v. Corrente, 2020 OK CIV APP 45473 P.3d 531

¶28 Whether a party is entitled to an attorney fee pursuant to a statute presents a question of law and is therefore reviewed de novo. See Boston Ave. Mgmt., Inc. v. Associated Res., Inc., 2007 OK 5152 P.3d 880See also Finnell v. Jebco Seismic, 2003 OK 3567 P.3d 339Tibbetts v. Sight'n Sound Appliance Ctrs., Inc., 2003 OK 7277 P.3d 1042

ANALYSIS

I. Dismissal Under the OCPA

¶29 SFBK argues on appeal that the district court erred in finding that it failed to make a prima facie showing of each essential element of its defamation claim. prima facie case of defamation." SFBK had the burden to show "by clear and specific evidence a prima facie case for each essential element of the claim in question." 12 O.S. § 1434

Oklahoma jurisprudence does define prima facie case. See, e.g., Hill v. State, 1983 OK CR 161672 P.2d 308prima facie case.

Krimbill, ¶ 15, 417 P.3d at 1246.

¶30 SFBK cites to Oklahoma Uniform Jury Instruction - Civil (OUJI) No. 28.2, 

In order to recover for defamation, [Plaintiff] has the burden of proving the following five elements by the greater weight of the evidence:

1. The statement exposed [Plaintiff] to public hatred, contempt, ridicule or disgrace;

2. [Defendant] communicated the statement to (a person)/(persons) other than [Plaintiff];

3. (That person)/(Those persons) reasonably understood the statement to be about [Plaintiff];

4. The statement was false; however, minor inaccuracies do not amount to falsity if the statement is substantially true; and,

5. The statement caused [Plaintiff] to suffer (a financial loss)/(damage to Plaintiff's reputation and/or emotional injury).

In addition, [Plaintiff] must prove by clear and convincing evidence that:

6. [Defendant] either knew the statement was false or had serious doubt whether the statement was true or false. 

¶31 On appeal, SFBK states that its assertions in the original petition, verified by the affidavit by Mr. Hooper, "established the falsity of Breuklander's statements." SFBK states:

[T]he trial court overlooked multiple instances in the Petition in which [SFBK] plainly showed that Breuklander's statements were false. For instance, the Petition states that "Breuklander repeatedly and falsely defamed [SFBK] in the news media, on social media, and with various governmental agencies." [SFBK] identified the content of those defamatory communications by referring to the article published in The Oklahoman. Yet again, the Petition asserted that Breuklander had "made false statements regarding [SFBK] to various governmental agencies, representatives, and the media" and that "Breuklander has falsely alleged that [SFBK] engaged in fraudulent or other wrongful activity in connection with [the Tourism Agreements.]" All such allegations were supported by the affidavit testimony of Mr. Hooper. 

¶32 Mr. Hooper's affidavit states, in pertinent part, that he is "the Vice President of [SFBK]" and that he makes his "affidavit on the basis of personal knowledge, as [he is] personally familiar with all the facts and documents at issue." He states he has "reviewed the facts alleged in the Petition" and "[t]he factual statements in the Petition, which are incorporated herein by reference, are true and accurate to the best of my knowledge and belief." He states that,

[s]ince the publication of the statements set forth in the article from The Oklahoman . . . and other statements on this same subject matter, the Oklahoma Tourism and Recreation Department has unilaterally canceled its contract with [SFBK]. The stated reasons for the cancellation track with the allegations made by the alleged "whistleblower" from that article.

¶33 In the petition, SFBK also described Mr. Breuklander's communications as constituting a "malicious smear campaign" that included statements that SFBK had undertaken "illegal and/or fraudulent conduct with regard to [its] billing practices under the Agreements with the Oklahoma Department of Tourism[.]" SFBK described such statements as false in its petition. 

¶34 Although SFBK has plainly stated that Mr. Breuklander's communications were false, less clear is whether SFBK, as it asserts on appeal, "plainly showed that Breuklander's statements were false." 

exhaustively examin[e] hundreds of invoices, presenting the testimony of dozens of witnesses (e.g., equipment suppliers, building contractors, etc.), and painstakingly supporting each and every charge on each and every one of the hundreds of invoices at issue. That simply cannot be the burden the OCPA requires a plaintiff to bear at the pleading stage. 

This assertion is belied by the fact that specific items are mentioned in the article in The Oklahoman and in Mr. Breuklander's testimony at the OCPA hearing. For example, at the OCPA hearing, Mr. Breuklander referenced "two old hickory smokers" that SFBK allegedly "billed the State as new equipment . . . [at] approximately $50,000 apiece." The Oklahoman similarly mentions these and other particular items -- for example, unjustified reimbursements from the State to SFBK for "the pair of used smokers," for "a water feature in front of the Quartz Mountain Lodge," for "mixed drink licenses [SFBK] never used," and for "a vintage camper and installation that was billed twice to Sequoyah State Park." SFBK failed to present any specific evidence pertaining to the truth or falsity of even one of these matters.

¶35 While the OCPA "clearly contemplates that the pleadings may be considered," "a petition, if pled to the minimum standard of notice pleading, may not provide sufficient 'clear and specific evidence' for purposes of the OCPA." Krimbill, ¶ 19, 417 P.3d at 1247 (emphasis omitted). Krimbill Court stated that because "§ 1444.1 defines truth and privilege as affirmative defenses," "the burden to show these defenses lies with the defendant in an OCPA proceeding, just as it would in any other proceeding." Krimbill, ¶ 47, 417 P.3d at 1252 (emphasis omitted). Indeed, there is, for example, a "common-law presumption that defamatory speech is false" and, where this presumption applies, the burden of proof is on the defendant to prove the speech is true. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 777 (1986). However, as explained by the Oklahoma Supreme Court, "[a] public official (or public figure) who prosecutes a defamation case must prove that the publication was a defamatory falsehood . . . ." Gaylord Ent. Co. v. Thompson, 1998 OK 30958 P.2d 128Hepps. Consequently, the district court did not err in placing the burden of proof on SFBK to present "clear and specific evidence" pertaining to falsity.

¶36 As indicated above, such evidence must be sufficient to support a finding in its favor as to falsity "until contradicted and overcome by other evidence." Krimbill, ¶ 15, 417 P.3d at 1246.

Once the first element is satisfied under § 1434, the burden shifts to the non-movant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." 12 O.S. § 1434prima facie case is defined as "[s]uch as will suffice until contradicted and overcome by other evidence." [Krimbill, ¶ 15, 417 P.3d at 1246]. The term "clear and specific evidence" is presumptively in harmony with the established standard for prima facie case. Id.

Roberts v. Bush, 2023 OK CIV APP 32537 P.3d 147Thompson v. State ex rel. Bd. of Trustees of Okla. Pub. Emps. Ret. Sys., 2011 OK 89264 P.3d 1251

¶37 SFBK asserted in its petition that Mr. Breuklander "falsely defamed [SFBK]" and undertook a "malicious smear campaign" accusing SFBK of "illegal and/or fraudulent conduct with regard to [its] billing practices under the Agreements with the Oklahoma Department of Tourism[.]" SFBK described such statements as false. It verified its petition by providing the affidavit of Mr. Hooper in which Mr. Hooper states he has "reviewed the facts alleged in the Petition" and further states: "The factual statements in the Petition, which are incorporated herein by reference, are true and accurate to the best of my knowledge and belief."

¶38 Although SFBK describes Mr. Breuklander's statements as false, we agree with the district court that SFBK has failed to establish falsity by clear and specific evidence. SFBK has failed to present any clear and specific evidence, whether by petition, affidavit or otherwise, Thompson, 2011 OK 89Krimbill,
¶ 51, 417 P.3d at 1252 (emphasis omitted) (citation omitted), 

II. Attorney Fees

¶39 SFBK argues that the district court erred as a matter of law in awarding attorney fees under 12 O.S. § 1438

¶40 This issue of whether an award of attorney fees under § 1438(A)(1) is mandatory or discretionary has been previously addressed by separate divisions of this Court. In Thacker v. Walton, 2021 OK CIV APP 5

[a]s support for the latter contention, . . . point[ed] to the language, "as justice and equity may require," which, according to [the plaintiff's] interpretation, means a court may opt not to award fees to a moving party even if the party's motion to dismiss a legal action under the OCPA is successful.

Thacker, ¶ 2, 499 P.3d at 1264-65. The Thacker Court analyzed the issue as follows:

We first address whether or not fees are mandatory under § 1438(A)(1). This Court, in Steidley v. Community Newspaper Holdings, Inc., 2016 OK CIV APP 63383 P.3d 780

Now, in the event the special motion to dismiss [filed pursuant to the OCPA] is granted, the claimant is responsible for mandatory attorney fees . . . . [T]he trial court must award such damages leaving only the appropriate amount of the award to the discretion of the trial court.

We hereby reaffirm that specific holding, which is further supported by the last antecedent rule, pursuant to which "a limited or restrictive clause contained in [a] statute is generally construed to refer to and limit and restrict the immediately preceding clause or last antecedent." Matter of Estate Tax Protest of Leake Estate, 1994 OK CIV APP 157891 P.2d 1299Id. The phrase in § 1438(A)(1), "as justice and equity may require," applies exclusively to the last antecedent, "other expenses incurred in defending against the legal action." The phrase does not convert 1438(A)(1) into a discretionary fee provision. A holding otherwise would render meaningless the following language in § 1438(A) mandating fees: "the court shall award to the moving party[.]" (Italics supplied).

Thacker, ¶ 3, 499 P.3d at 1265.

¶41 We find instructive the Thacker Court's analysis of § 1438(A)(1) and, therefore, disagree with SFBK's interpretation of the statutory language at issue. We conclude the district court did not err as a matter of law in treating § 1438(A)(1) as a mandatory fee provision.

¶42 SFBK next challenges the amount of fees awarded by the court. It argues that the district court's "conclusions as to hourly rates, hours worked, and apportionment are unsupported and unsupportable." In this regard, it asserts that "how [the court] arrived at its final number is not stated." In addition, SFBK asserts that, "[b]ecause [the] First Amended Petition was not dismissed under the OCPA, the trial court erred in awarding any fees in connection with the First Amended Petition."

¶43 As above stated, the district court, in its March 2023 Order, awarded Mr. Breuklander attorney fees in the amount of $45,305 pursuant to § 1438(A)(1) of the OCPA. The court stated in its March 2023 Order, in pertinent part, as follows:

8. To determine reasonable attorney fees, the Court will first calculate a lodestar fee utilizing detailed time records and multiplying the hourly rate by the hours expended. Spencer v. Oklahoma Gas & Elec. Co., 2007 OK 76171 P.3d 890State ex rel. Burk v. City of Oklahoma City, 1979 OK 115598 P.2d 659

A. Time and Labor Required/ Reasonable Number of Hours Billed

9. The Court considers the billing records submitted by Defendant's counsel. This case involves claims impacted by the OCPA and claims not impacted by the OCPA. Defendant's counsel addressed the reduction of their billing records attributable to the non-OCPA matters. 

B. The Novelty and Difficulty of the Questions/ The Undesirability of the Case/ The Skill Required to Perform the Legal Service Property/ The Experience, Reputation and Ability of the Attorneys

10. The OCPA is a detailed area of civil procedure. With the limited case law in Oklahoma, most research must be done in outside jurisdictions. This specific matter involves a publicized matter which may deter some attorneys from representing the Defendant. The experience, reputation and ability of the attorneys involved was not contested by the Plaintiff or its counsel.

C. The Preclusion of other Employment by the Attorney Due to Acceptance of the Case/ Time Limitations imposed by the Client or the Circumstances/ Nature and Length of the Profession[al] Relationship with the Client

11. Defendant did not present evidence of these factors.

D. The Hourly Rate/ Customary Fee/ Whether the Fee is Fixed or Contingent

12. Plaintiff objects to the reasonableness of the hourly rate of Defendant's counsel for purposes of fee shifting or fee allocation. The Court finds that rates of Defendant's counsel are higher than the industry standard in the Oklahoma City area, in particular the rates of counsel with limited experience in the legal field and for paralegals or legal secretaries; however, the Court finds the hourly rates are reasonable.

E. The Amount involved and the Results Obtained

13. This case is early in the litigation process. Three Motions to Dismiss and subsequent briefs have been filed as of the date of this Order. Defendant was successful in the first and second Motion to Dismiss. The Court has ruled in Defendant's favor on the motions that have been contemplated to date.

F. Awards in Similar Cases

14. With limited authority or similar cases to review, the Court has reviewed awarded by trial courts in Oklahoma. Most of the attorney fee and costs awards in OCPA cases [have] been considerably less than Defendant is seeking. From the Court's review, this is due to the Defendant's counsel hourly rate as well as the multiple amendments filed by Plaintiff.

15. Defendant is awarded attorney fees in the amount of $45,305.00.

¶44 As SFBK acknowledges on appeal: "The trial court obviously awarded less than the total amount Breuklander requested . . . ." Indeed, at least according to the March 2023 Order, Mr. Breuklander requested a total of $54,595 in attorney fees. In his first application, Mr. Breuklander requested $27,165 in attorney fees for work performed by the law firm representing him -- Helms Law Firm. The application asserts that over half a dozen attorneys from the firm performed at least some work on the case: including 18.1 hours by one attorney at $250 per hour; 25.9 hours by another attorney at $150 per hour; 31.2 hours by yet another attorney at $350 per hour; and 11.8 hours by Conner L. Helms, described as "the supervising attorney in this matter," 

¶45 Although the order contains a discussion of the Burk factors, it does not contain an adequate computation to support the award. As above quoted, the order states that, "[t]o determine reasonable attorney fees, the Court will first calculate a lodestar fee utilizing detailed time records and multiplying the hourly rate by the hours expended." However, the court does not set forth a lodestar fee or its calculation in the order.

¶46 In addition, adding together the total fee amounts requested in Mr. Breuklander's applications amounts to $50,330, not to the $54,595 set forth in the court's order. Moreover, at the time of the attorney fee hearing and consistent with the testimony of Mr. Breuklander's attorney fee expert, it appears Mr. Breuklander was ultimately requesting an even lower amount. For example, as reflected in Mr. Breuklander's Exhibit 24, entitled "Aid to the Court," Mr. Breuklander was requesting "Adjusted Fees" of $45,335 after a "Reduction" for paralegal and other services.

¶47 This amount is strikingly similar, but not equal, to the court's award of $45,305. However, although the court found "the hourly rates are reasonable," the court also stated it intended to apportion the fees by eliminating from its calculation any hours "attributable to the non-OCPA matters." Thus, an award of the adjusted fee amount set forth in Mr. Breuklander's exhibit would be inconsistent with the court's order.

¶48 For these reasons, we agree with SFBK's assertion on appeal that the order is deficient because "how [the court] arrived at its final number is not stated." In this case -- which, as indicated above, involves a wide array of hourly rates of multiple attorneys -- SFBK is correct that the court has not provided its specific calculation. The Oklahoma Supreme Court has recently emphasized that "the trial court should set forth with specificity the facts, and computation to support [its] award." Fleig v. Landmark Constr. Grp., 2024 OK 25549 P.3d 1208State ex rel. Burk v. City of Okla. City, 1979 OK 115598 P.2d 659Burk factors, it fails to contain an adequate computation to support the award. Because "[a] trial court order awarding attorney fees must set forth with specificity the facts and computation to support the award," Fleig, ¶ 23, 549 P.3d at 1212, the March 2023 Order is reversed, and the cause is remanded for proceedings consistent with this Opinion.

III. Mr. Breuklander's Appeal and the First-Stage Inquiry under the OCPA Pertaining to the Remainder of the Case

¶49 As above stated, on February 14, 2023, Mr. Breuklander filed a motion to dismiss SFBK's Second Amended Petition, and a hearing was held on this motion on April 3, 2023. The court stated at the hearing:

I am finding that the OCPA does not apply to the remaining claims. I think Plaintiff has carved out a petition that removes any type of restriction related to communication that the OCPA was written to protect. . . . The remaining claims and allegations relate to [Mr. Breuklander's] employment and actions that he did or did not take through his employment.

Moreover, the court denied Mr. Breuklander's § 2012(B)(6) motion to dismiss the Second Amended Petition. The court's findings are reflected in its Order filed on April 10, 2023, in which it is stated that the OCPA "does not apply to the claims asserted in Plaintiff's Second Amended Petition. The Court therefore evaluates the Motion as an ordinary motion to dismiss pursuant to 12 O.S. § 2012

¶50 Of course, "[a] court's denial of a motion to dismiss is not traditionally a final order[.]" Anderson v. Wilken, 2016 OK CIV APP 35377 P.3d 149State ex rel. Bd. of Regents of Univ. of Okla. v. Lucas, 2013 OK 14297 P.3d 378

requires the movant to show that the speech or expressive conduct that is the subject of the suit falls under the protection of the act. [Mr. Breuklander] here was initially required to show that the Plaintiff's suit related to activity protected by the OCPA, e.g., "speech on a matter of public concern." 12 O.S. § 1434

On appeal, Mr. Breuklander asserts that the district court erred in finding that the OCPA does not apply to the Second Amended Petition.

¶51 The Second Amended Petition contains allegations pertaining to Mr. Breuklander's alleged conduct before and soon after the termination of his employment relationship with SFBK. It is alleged, for example, that he refused to return company property and threatened to use Swadley Family Business data to wrongfully benefit himself or competitors. SFBK alleged, for example, that Mr. Breuklander "was bound by," and violated, "the contractual provisions of the Employee Handbook that prohibit misappropriation and unauthorized disclosure of company property, data, and information[.]" SFBK further alleged, for example, that Mr. Breuklander, "[s]hortly after his resignation, . . . began contacting employees of the Swadley Family Businesses in an effort to lure them away from Swadley's to Breuklander's own competing venture(s)"; that he "contacted and/or personally visited customers of the Swadley's Family Businesses and attempted to sabotage their relationship with the Swadley's Family Businesses by providing false information"; and that he "knowingly submitt[ed] false and/or fraudulent invoices to the State of Oklahoma" during his employment with SFBK. SFBK asserted claims of breach of contract, breach of fiduciary duty, indemnification, and contribution against Mr. Breuklander.

¶52 The OCPA states that its

purpose . . . is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

12 O.S. § 143012 O.S. § 143212 O.S. § 143112 O.S. § 1431

2. A legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct the action is based upon arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer[.]

¶53 We conclude the district court properly determined the alleged conduct articulated in the Second Amended Petition does not fall under the OCPA. As above discussed, the Oklahoma Supreme Court, in its order entered in April 2023, during the pendency of this appeal, concluded, in effect, that the claims at issue in the Second Amended Petition do not arise from the same transaction or occurrence as those dismissed by the district court under the OCPA. Moreover, we conclude those pending claims are not "based on, relate[d] to or . . . in response to [Mr. Breuklander's] exercise of the right of free speech[.]" The following alleged communications, for example, are not statements made in connection with a matter of public concern about which Mr. Breuklander was attempting to "speak freely" and publicly: communications to SFBK that Mr. Breuklander would "use Swadley Family Business data to . . . benefit himself or competitors"; his communications to "employees of the Swadley Family Businesses in an effort to lure them away from Swadley's to Breuklander's own competing venture(s)"; "contact[ing] and/or personally visit[ing] customers of the Swadley's Family Businesses and attempt[ing] to sabotage their relationship with the Swadley's Family Businesses by providing false information"; and "knowingly submitt[ing] false and/or fraudulent invoices to the State of Oklahoma" during his employment with SFBK.

¶54 Consequently, we conclude the district court did not err in rejecting Mr. Breuklander's request that the Second Amended Petition be dismissed under the OCPA.

CONCLUSION

¶55 We affirm the district court's January 2023 and April 2023 orders, but we reverse the district court's March 2023 order. We remand for further proceedings in a manner consistent with this Opinion.

¶56 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

HIXON, V.C.J., and HUBER, J., concur.

FOOTNOTES

The Oklahoman on April 15, 2022, entitled: "Swadley's whistleblower alleges overcharges, excessive fees in Oklahoma tourism deal." SFBK asserted Mr. Breuklander "is the source of this article and is a disgruntled former employee, not a 'whistleblower.'"

12 O.S. §§ 143012 O.S. § 2012

See 20 O.S. 2021 § 1602 ("The [Oklahoma] Supreme Court and the Court of Criminal Appeals may answer a question of law certified to it by a court of the United States, or by an appellate court of another state, or of a federally recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state.").

See also Lincoln Farm, L.L.C. v. Oppliger, 2013 OK 85315 P.3d 971judgment the Court may reverse, vacate, or modify any anterior intermediate order involving the merits of the action or any portion thereof. An immediately appealable-by-right interlocutory order which is not appealed or a non-appealable uncertified interlocutory order may thus be subject to appellate review on appeal from the subsequent judgment." (citations omitted)).

12 O.S. § 1434See also 12 O.S. § 1431see Part III of Analysis, infra), we conclude the court did not err in determining that Mr. Breuklander "met the first stage inquiry" and that the speech is in connection with a matter of public concern.

See Anaya v. CBS Broad. Inc., 626 F. Supp. 2d 1158, 1184 (D.N.M. 2009) ("A determination that a plaintiff is a public figure rests on . . . important policy considerations," including "a strong interest in debate on public issues[.]" (citation omitted)). Moreover, one may be a "limited-purpose public figure" -- i.e., "a public figure for a limited range of issues." Pegasus v. Reno Newspapers, Inc., 57 P.3d 82, 91 (Nev. 2002). "The test for determining whether someone is a limited public figure includes examining whether a person's role in a matter of public concern is voluntary and prominent." Id. at 91. We note that some courts have tended to find restaurants or restaurant owners to be at least "limited public figures" for purposes of defamation actions when the topic or controversy involved a matter of public concern, including the operation of a public restaurant, but not when the alleged defamatory matter concerned a private matter unrelated to the restaurant. See Tracy A. Bateman, Who is "public figure" for purposes of defamation action, 19 A.L.R.5th 1 (Originally published in 1994). Here, the subject matter involved the alleged misuse of state funds by SFBK toward the construction and operation of its restaurants at state parks.

12 O.S. 2021 § 1444.1

In all civil actions to recover damages for libel or slander, it shall be sufficient to state generally what the defamatory matter was, and that it was published or spoken of the plaintiff, and to allege any general or special damage caused thereby. As a defense thereto the defendant may deny and offer evidence to disprove the charges made, or he may prove that the matter charged as defamatory was true and, in addition thereto, that it was published or spoken under such circumstances as to render it a privileged communication.

Moreover, § 1441 provides: "Libel is a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation . . . ." The comments to OUJI No. 28.2 state, in part, as follows:

The fourth element is included because § 1441 appears to make the issue of falsity a part of the plaintiff's case. The United States Supreme Court has stated that a public figure plaintiff has the burden of proof on the issue of falsity in a defamation case. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 775, 776-77 (1986) (also holding that a private figure plaintiff has the burden of proof on the issue of the falsity of a media defendant's speech on a matter of public concern).

[t]he only issues of invoices that was part of the whistleblowing was about [certain barbeque smokers] there were sold to the State as new that were used that were yanked out of the Admore Swadley's and sold and put into the State's lodge that they were reopening that my client objected to and told them they couldn't do that.

12 O.S. § 1435

12 O.S. § 1435

See also Buckner v. Gen. Motors Corp., 1988 OK 73760 P.2d 803rather than allegations of conclusory statements. Without a showing that evidence is available, mere contentions and arguments cannot and will not make it true." (emphasis added)).

A. If the court orders dismissal of a legal action under the [OCPA], the court shall award to the moving party:

1. Court costs, reasonable attorney fees and other expenses incurred in defending against the legal action as justice and equity may require; and

2. Sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in the [OCPA].

B. If the court finds that a motion to dismiss filed under the [OCPA] is frivolous or solely intended to delay, the court may award court costs and reasonable attorney fees to the responding party.

see Krimbill, ¶¶ 37-38, 417 P.3d at 1250, the Legislature has placed some importance on the "intended audience" of the speech and whether it is the public or, as in the commercial speech exemption, merely a buyer or customer.